**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE 1724, Defendant.**

**No. 78 Civ. 2475.**

United States District Court, S. D. New York.

July 27, 1978.

As Amended Oct. 13, 1978.

Robert B. Fiske, Jr., U. S. Atty., by Frederick T. Schaffer, Asst. U. S. Atty., New York City, for plaintiff.

Jan Harrington, pro se.

## MEMORANDUM OPINION

LEVAL, District Judge:

The United States of America brings this *in rem* action seeking the forfeiture, confiscation and destruction of allegedly obscene printed matter and films seized by United States Customs Officials during a routine inspection of mail from abroad. Approximately thirty pieces of mail were intercepted by Customs Officials during the period May 10 to May 24, 1978, and notice was sent to each of the addressees informing them that this action had been commenced and advising them of their right to contest the seizure. Three of the addressees (the "Claimants") responded that they contested the seizure of the items addressed to them, which included several magazines (Seizure Nos. 06836–011 and 06836–014) and an 8mm film (Seizure No. 06836–006). A hearing was scheduled for July 24, 1978 which was attended by one of the claimants, Jan Harrington, the addressee of the film (No. 006). The case was heard by the court, neither the claimant nor the Government having requested a jury.

The court viewed the claimed motion picture and heard argument offered by claimant Harrington. In addition the court inspected claimed Seizures Nos. 011 and 014 and reviewed the written submissions of claimant Palantiri (011). Finally, as to all unclaimed items, the court has inspected the materials to determine whether they are subject to seizure under section 305 of the Tariff Act.

Section 305 of the Tariff Act prohibits the importation into the United States from any foreign country of "any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material . . ." 19 U.S.C. § 1305(a). The Supreme Court has upheld the application of this statute to both the commercial importation of obscene materials and to the importation of obscene materials for the private, personal use and possession of the importer. *United States v. Thirty-Seven 37 Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *United States v. 12 200 ft. Reels of Super 8mm Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). The sole issue presented for the court is whether the items seized were obscene within the meaning of the statute, construed in accordance with First Amendment restrictions.

The three-tiered test of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) asks whether the item in question, judged against the relevant contemporary community standards, appeals to the prurient interest, depicts or describes sexual conduct in a patently offensive way, and, taken as a whole, lacks serious literary, artistic, political, or scientific value. The *Miller* standards are applicable to 19 U.S.C. § 1305. *United States v. 12 200 ft. Reels of Super 8mm Film, supra.*

Film 006 whose seizure was contested by Harrington is about 10 minutes long and shows two naked boys, apparently between 14 and 17 years of age, seated on a couch, who engage together in masturbation and oral and anal intercourse. The film has no plot, point or message other than the display of the sexual conduct; it displays no acting or directorial skills; apart from the brief use of a rotated prism lens, it shows nothing technically unusual or interesting.

I find that the *Miller* test is satisfied as to this film and that it is subject to seizure

under § 305. A wide consensus of public opinion in this and other communities has expressed outrage at the utilization of children engaged in sex acts for the creation of commercial pornography.

■ Claimed Seizure No. 011 is a magazine entitled "New Action: School Girls and Boys: 64 Pages True Pedophilic". It displays photographs of children said to be (and appearing to be) as young as 5 years old and ranging up to 12 or 13, engaging in a variety of sex acts, and being sodomized by an adult male. It is found to be obscene and ordered condemned.

Claimed Seizure No. 014 is a magazine entitled Wetsex which shows photographs of an adult man and woman, probably between the ages of 25 and 30 engaged together in a variety of sex acts and urination.

Decision as to the seizure of this adult material presents a more difficult problem. In the first place, the courts construing the limits of constitutional protection have frequently recognized the importance of mode of distribution, and the danger that offensive material will be forced on unwilling viewers and on children. See *Miller v. California,* 413 U.S. at 19, 93 S.Ct. at 2612; *Ginzburg v. United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). It is of considerable significance on this point that this item is a small magazine mailed apparently on request in a plain unmarked, hand addressed envelope. Thus the potentially offensive matter is not inflicted on any unwilling viewer, and is likely furthermore to be seen only by the subscriber.

■ The criterion to be applied to the determination of unacceptability is the community standard of the district of seizure. *United States v. Various Articles,* 562 F.2d 185 (2 Cir. 1977). No evidence having been offered by either government or claimant as to the community standards (and none being required), the court apparently must attempt that difficult determination based on its own observations of the community. See *U. S. v. Various Articles, supra.* The most apparent factor in seeking to make

that determination is that the community does not speak with any consensus. Without question a significant population is outraged and disgusted by such materials. It is equally clear, given the proliferation of such materials, that the approving and consuming public is enormous. In my view, perhaps the largest element of the community and that closest to common ground expresses a view which tolerates the wishes of others to consume such adult materials privately and does not find them patently offensive *per se* unless publicly displayed in an offensive manner.

Except where the corruption and exploitation of children are involved, public outcries against pornography and commercial sex activities in this community more often have to do with resentment of its intrusion into particular neighborhoods or with offensive display rather than with categorical objection to the existence of the materials or the activity.

■ Based on these findings as to the attitudes of the relevant community, I conclude that seizure No. 014, being adult matter distributed in discreet and private fashion, is not subject to condemnation under Section 305, as limited by the *Miller* opinion. In making this finding, I express my view of my duty as a judge to wield the censor's ax with cautious reluctance and only when it is clear that the material is not entitled to constitutional protection. Heavy handed censorship I think a far more dangerous abuse than the discreet private consumption of adult materials intended for sexual stimulation.

In the light of the considerations expressed above with respect to the three contested magazines, I have reviewed the seizures as to which no protest was received and have determined that those items listed in Schedule A are obscene. Accordingly, they are ordered condemned.

The items listed in Schedule B are not found to come within the *Miller* standards. They are ordered delivered to their addressees.

Generally all the items which display photographs of young children have been found patently offensive within the community standards, excepting those in which the child is not shown to be engaged in sexual activity or lewd display. Nudity or provocative presentation do not render a work obscene. The *Miller* decision, specifying the types of conduct which might make published matter obscene, listed

> Patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated [and]

> [p]atently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibitions of the genitals." 413 U.S. at 25, 93 S.Ct. at 2615.

*See also* N.Y.Penal Law, § 235.00. All exhibition of the genitals is not necessarily "lewd" exhibition of the genitals. Several of the items released showed children in varying states of nudity, but were found not to include either sex acts or *lewd* genital display. While the use of children in this fashion may be exploitive and offensive, that does not make it obscene.

In addition, one publication—entitled *Eva Ionesco* (Nos. 015 and 016) differs substantially from the other items. It consists of photographs of a young girl said to be taken by her mother. In some photographs the girl is naked but for props and jewelry, in some she is partially clothed and in some fully clothed. No sexual activity of any kind is shown. In these images, the photography, lighting, costuming, set design, theatrical posing, gestures of dance and composition are not without interest, taste and quality. I would be reluctant to impose the judgment that this publication "taken as a whole, lacks serious . . . artistic . . . value." I find that it is not patently offensive and that it does not contain either representations of sex acts or lewd exhibition of genitals.