### Lawtis Donald RHODEN

v.

### Jack MORGAN, Warden, State of Tennessee, and Charles W. Burson, Attorney General of the State of Tennessee.

Nos. 3:91–0553, 3:91–0663.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 19, 1994.

William Joseph Marett, Nashville, TN, Gary L. Anderson, Knoxville, TN, for petitioner.

C. Mark Fowler, Nashville, TN, for respondents.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

The Court is in receipt of the Magistrate Judge's Report and Recommendation (Doc. No. 43) in the above-styled matter to which Petitioner has filed timely Objections (Doc. No. 47). Respondent has filed a Reply to Petitioner's Objections (Doc. No. 48), and Petitioner has filed a Traverse to Respondent's Reply (Doc. No. 51). On November 8, 1993, the Court heard Oral Argument from the parties on their respective objections to the Report and Recommendation. Upon review of the record in this case and the filings and arguments of the parties, the Court finds some of Petitioner's objections to be meritorious, and rejects in part and modifies in part the Report and Recommendation as follows.

### I. INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), Magistrate Judge Haynes filed a Report and Recommendation in this action on April 23, 1993. The Magistrate recommended that the petition for writ of habeas corpus be denied. Petitioner is a state prisoner who is currently confined in Turney Center Prison in Only, Tennessee. The relevant facts are as follows.

During the first week of December, 1984, Petitioner Lawtis Donald Rhoden went to Nashville and met his girlfriend, Cornelia "Connie" Widmann. (*Report and Recommendation*, Doc. No. 43, at 2.) Ms. Widmann had been living in Nashville and renting a room from the Wright family. (*Id.*) At the instruction of Mr. Rhoden, Ms. Widmann had inquired of the Wright's thirteen-year-old daughter ["Ms. Wright"] whether she would be interested in being a model and having her picture taken by Mr. Rhoden. (*Id.*) Mr. Rhoden had also spoken with Ms. Wright by telephone about being photographed. (*Id.*) Ms. Wright was told that

she would be photographed for a photography class. (*Id.*)

After arriving in Nashville, Mr. Rhoden went with Ms. Widmann to purchase cameras, film, and clothes to be worn by Ms. Wright. (*Report and Recommendation*, Doc. No. 43, at 2.) On December 4, 1984, Ms. Widmann went to Ms. Wright's school and brought Ms. Wright to a local motel where Mr. Rhoden was waiting. (*Id.*) After Ms. Wright showered, Ms. Widmann assisted her with her hair and makeup. (*Id.* at 2–3.) When Ms. Wright attempted to wear some of the clothes that had been purchased for her, it was discovered that some of the clothes did not fit. (*Id.* at 3.) Mr. Rhoden ordered Ms. Widmann to return to the store and exchange the clothes, and Ms. Widmann left the motel. (*Id.*)

While Ms. Widmann was away, Mr. Rhoden took photographs of Ms. Wright in various poses. (*Report and Recommendation*, Doc. No. 43, at 3.) Ms. Wright alleged that for some of the pictures Mr. Rhoden removed Ms. Wright's clothing, except for her bra, and photographed her with her genitals exposed. (*Id.*) In addition, Ms. Wright alleged that Mr. Rhoden performed cunnilingus on her and attempted to insert his penis into her vagina on three separate occasions. (*Id.*) She testified that he penetrated her vagina on one occasion. (*Id.*)

When Mr. Rhoden finished taking photographs, Mr. Rhoden told Ms. Wright that he would give her a computer and $500.00 if she would not tell her mother about what had happened at the motel. (*Report and Recommendation*, Doc. No. 43, at 3.) Ms. Widmann returned and drove Mr. Rhoden to the airport while Ms. Wright waited in the motel room. (*Id.*) Mr. Rhoden told Ms. Widmann that he had a client that would pay a large sum of money to see a little girl in her underwear and that he would give Ms. Widmann half of it. (*Id.*) As well, he later telephoned Ms. Widmann and told her that the pictures he took of Ms. Wright constituted child pornography. (*Id.*)

A subsequent medical examination of Ms. Wright revealed the presence of sperm, as well as recent trauma to the hymenal area inside the vagina and a hematoma. (*Report and Recommendation*, Doc. No. 43, at 3.)

Mr. Rhoden was arrested and charged with two offenses, rape (Count I) and use of a minor for obscene purposes in violation of Tenn.Code Ann. § 39–6–1137 (Count II). (*Report and Recommendation*, Doc. No. 43, at 2.)

In December 1984, the time at which Mr. Rhoden allegedly violated the statute, Tenn. Code Ann. § 39–6–1137 provided:

(a) It shall be a felony, punishable by imprisonment for not less than three (3) years nor more than twenty-one (21) years and a fine of not more than Ten Thousand Dollars ($10,000), for any person:

(1) To knowingly promote, employ, use or permit a minor to engage in or assist others to engage in:

(A) Posing or modeling alone or with others in any performance of sexual conduct for purposes of preparing a film, photograph, negative, slide or motion picture or other matter which is obscene;

(B) Sexual conduct by the minor alone or with other persons or animals; or

(C) Promoting any matter which depicts any minor posing alone or with others in any sexual performance which is obscene. . . .

(8) "Obscene" means:

(A) That the average person applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;

(B) That the work depicts or describes, in a patently offensive way, sexual conduct; and

(C) That the work taken as a whole, lacks serious literary, artistic, political, or scientific value.

(9) "Sexual conduct" as used in this section shall include but not be limited to sexual intercourse; sodomy; sexual bestiality; masturbation; sado-masochistic

abuse; excretion; or the exhibition of the male or female genitals.

(Tenn.Code Ann. § 39–6–1137 (1984).)

Mr. Rhoden was indicted on April 19, 1985, on counts of rape and using a minor "to engage in posing or modeling in performance of sexual conduct to-wit, exhibition of the female genitals for the purpose of preparing photographs which were obscene in violation of Tenn.Code Ann. § 39–6–1137." (*Pet'r's App.Br.*, App. A, Doc. No. 3, at 1; *Pet'r's Objections*, Doc. No. 47, at 17 n. 2.)

The Tennessee Legislature amended the definition of "sexual conduct" in Tenn.Code Ann. § 39–6–1137(9) in 1985 to substitute "lewd exhibition" for mere "exhibition" of genitals. The amendment became effective on July 1, 1985. (*Pet'r's App.Br.Supp.Pet. Habeas Corpus*, App. B, Doc. No. 3, at 1.) The legislative record indicates that the July 1985 amendment was adopted in response to concerns that the original language was unconstitutionally overbroad. (*Pet'r's App.Br.*, App. E, Doc. No. 3, at 2.) The legislature adopted the directive of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which provides that "lewd exhibition" of genitals may be considered obscene. (*See Pet'r's App.Br.*, App. E, Doc. No. 3, at 2; *Miller*, 413 U.S. at 25, 93 S.Ct. at 2615.)

The statute under which Mr. Rhoden had been indicted had been amended, and the amendment had become effective on July 1, 1985, prior to Mr. Rhoden's trial on October 21, 22, and 23, 1985. (*Pet'r's App.Br.*, App. B., Doc. No. 3, at 1; *Pet'r's Objections*, Doc. No. 47, at 17–18.) Mr. Rhoden's trial counsel, William Wilson, did not discover that the statute had been amended until Mr. Rhoden's post-conviction hearing. (*Pet'r's Objections*, App. A., Doc. No. 47, at 104–05.)

Mr. Rhoden was convicted on October 23, 1985, of rape and use of a minor for obscene purposes. (*Report and Recommendation*, Doc. No. 43, at 2.) As a result of his convictions, Mr. Rhoden was sentenced to twenty (20) years on each offense to be served consecutively. (*Id.* at 3.)

The Tennessee Court of Criminal Appeals affirmed Mr. Rhoden's conviction on direct appeal, 739 S.W.2d 6. (*Report and Recom-*

*mendation*, Doc. No. 43, at 3.) On October 5, 1987, the Tennessee Supreme Court denied Mr. Rhoden's application for permission to appeal. (*Id.*) Mr. Rhoden filed a state post-conviction petition on February 16, 1988, which was denied by the trial court. (*Id.*) On February 21, 1991, the Tennessee Court of Criminal Appeals affirmed the trial court's denial of Mr. Rhoden's post-conviction petition, and the Tennessee Supreme Court denied Mr. Rhoden's application for permission to appeal on July 1, 1991. (*Id.* at 3–4.)

On July 17, 1991, Mr. Rhoden filed his federal Petition for Writ of Habeas Corpus. (*Pet'r's Objections*, Doc. No. 47, at 2.) In his petition, Mr. Rhoden raises the following nine claims:

(1) Petitioner was convicted of a state obscenity statute that was unconstitutionally vague, overbroad, and indefinite on its face and as applied to him in violation of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

(2) Petitioner's state conviction for Count II, a violation of Tenn.Code Ann. § 39–6–1137, cannot be sustained as a matter of law because the evidence was insufficient under First and Fourteenth Amendments standards;

(3) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the First, Sixth, and Fourteenth Amendments to the U.S. Constitution due to juror misconduct and bias;

(4) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution due to the improper admission of a prior uncharged rape during the State's case-in-chief;

(5) Petitioner was denied a fundamentally fair trial by an impartial jury and the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution where the trial court precluded him from raising his "consent" defense during voir dire and opening statements;

(6) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth

Amendments to the U.S. Constitution due to the State's prosecutorial misconduct and improper closing arguments;

(7) Petitioner was denied constitutionally effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution;

(8) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution due to the cumulative effect of the errors argued herein;

(9) Petitioner was denied constitutionally effective assistance of appellate counsel due to the failure of appellate counsel to exhaust issues now subject to the defense of failure to exhaust remedies and/or procedural default.

(*Report and Recommendation*, Doc. No. 43, at 4.)

The Magistrate Judge recommends denying Petitioner Rhoden's Petition, with the exception of Mr. Rhoden's third claim, alleging juror misconduct, which the Magistrate Judge recommends dismissing without prejudice for failure to exhaust state remedies. (*Report and Recommendation*, Doc. No. 43, at 31.) The Magistrate Judge recommends that Petitioner's first, fourth, fifth, sixth, and eighth claims be denied on the grounds that they are procedurally defaulted; that his seventh and ninth claims be denied on the merits with a finding that Petitioner received constitutionally effective assistance of trial and appellate counsel; and that his second claim be denied on the merits with a finding that the evidence was constitutionally sufficient to sustain a conviction for Count II. (*Id.* at 29–31.)

Mr. Rhoden objects to the Magistrate Judge's findings and recommendations. Mr. Rhoden argues that his third claim is not subject to the state exhaustion requirement because it is excepted from this requirement on the grounds that there was an "absence of available state corrective process" at the time he filed his petition. (*Pet'r's Objections*, Doc. No. 47, at 3–9.) Mr. Rhoden further argues that his seventh and ninth claim should not be dismissed because he received constitu-

tionally ineffective assistance of trial and appellate counsel. (*Id.* at 15–20.)

Mr. Rhoden objects to the Magistrate Judge's recommendation that his first, fourth, fifth, sixth, and eighth claims be denied as procedurally defaulted on the grounds that he has properly raised the relevant facts and law to support his federal habeas issues in the state courts. (*Pet'r's Objections*, Doc. No. 47, at 32–34.) Moreover, Mr. Rhoden argues that he is not required to raise his eighth claim as an independent habeas claim because the federal courts should reach the issue *sua sponte.* (*Id.* at 35.)

Mr. Rhoden further argues that his first claim is not procedurally defaulted because the state appellate court's determination that the issue is procedurally barred in this instance is not an adequate and independent state ground on which the state can rely to foreclose federal review. (*Pet'r's Objections*, Doc. No. 47, at 21–23.) Specifically, Mr. Rhoden alleges that Tenn.R.Crim.P. 12(b), the rule which provides that matters capable of determination without trial may be raised by pretrial motion, may not be used as an adequate and independent state ground because the Tennessee state courts have not consistently and regularly applied Tenn.R.Crim.P. 12(b) to find procedural default where there has been a failure to attack the constitutionality of a statute prior to trial. (*Id.*) However, even if any or all of his first, fourth, fifth, sixth, and eighth claims are procedurally defaulted, Mr. Rhoden alleges that any procedural default must be excused under the cause and prejudice standard which Petitioner meets due to the constitutionally ineffective assistance of counsel he received. (*Pet'r's Objections*, Doc. No. 47, at 32–34.)

Respondent urges the Court to adopt the Magistrate's Report and Recommendation, with the exception of the Magistrate Judge's recommendation that Petitioner's third claim be dismissed for failure to exhaust state remedies. (*Resp.'s Reply Pet'r's Objections*, Doc. No. 48, at 2.) Respondent argues that Petitioner's third claim is procedurally defaulted and should be dismissed. (*Id.* at 2–12.)

In response to Respondent's Reply, Mr. Rhoden argues that his third claim is not procedurally defaulted, and that even if it is, the procedural default .must be excused .for satisfying the cause and prejudice standard. (*Pet'r's Traverse Resp.'s Reply,* Doc. No. 51, at 3–13.)

For the reasons set forth below, the Court rejects in part and modifies in part the Magistrate Judge's Report and Recommendation.

## II. DISCUSSION

Petitioner's second, seventh, and ninth claims have been properly presented to the state courts. At issue are the following: (1) whether Petitioner's third claim alleging juror misconduct must be dismissed for state exhaustion; (2) whether Petitioner's first, fourth, fifth, sixth, and eighth claims have been procedurally defaulted; (3) whether Petitioner's first claim challenging the constitutionality of Tenn.Code Ann. § 39–6–1137(a)(9) may be addressed on the merits and, if so, whether the statute was unconstitutional on its face or as applied to him; (4) whether any procedural default must be excused for cause and prejudice; (5) whether Petitioner's seventh and ninth claims alleging ineffective assistance of counsel must be dismissed on the merits; and (6) whether Petitioner's second claim alleging unconstitutional conviction must be dismissed on the merits on the grounds of sufficient evidence.

### A. *Exhaustion of State Remedies.*

Under 28 U.S.C. § 2254, a state prisoner may challenge the constitutionality of his conviction by filing a petition for a writ of habeas corpus. 28 U.S.C. § 2254(a). The petition may not be granted, however, unless the prisoner has first fairly presented his claims to and exhausted his claims in the state courts. *See* 28 U.S.C. § 2254(b); *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989), *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989). This exhaustion requirement springs from considerations of comity between the states and federal government and is designed to give the states an initial opportunity to pass upon and correct any constitutional infirmity in a state prisoner's conviction. *See Castille,* 489 U.S. at 349, 109 S.Ct. at 1059; *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971).

A claim is "fairly presented" for exhaustion purposes where a .petitioner alleges the same claim under the same theory in the state courts. *Pillette v. Foltz,* 824 F.2d 494, 497 (6th Cir.1987). *See also Rudolph v. Parke,* 856 F.2d 738, 739–40 (6th Cir.1988) (presentation of issue sufficient even if only in reply brief to state courts). Where a claim is thus fairly presented, the exhaustion requirement is satisfied regardless of whether the state courts address and dispose of it. *Rudolph,* 856 F.2d at 739.

Notably, the exhaustion requirement is not imposed if it appears that there is "either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). Thus, no exhaustion is required where state remedies were unavailable at the time a petitioner filed his federal petition. *See Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1569–70 n. 25, 71 L.Ed.2d 783 (1982), *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982), *reh'g denied,* 457 U.S. 1141, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1982); *Meeks v. Bergen,* .749 F.2d 322, 324 (6th Cir.1984).

In the present case, it is conceded that Petitioner has never presented his third claim, alleging juror misconduct and bias, to the Tennessee state courts. Petitioner argues that he did not present the claim previously because he was barred by local state court Rule 5.04(e) from contacting jurors about their verdict. *Pet'r's Traverse Resp.'s Reply,* Doc. No. 51, at 4. Petitioner alleges that he was unaware that the Tennessee Court of Criminal Appeals rendered Rule 5.04(e) invalid on March 21, 1990, in an unpublished opinion. *Traverse,* App. A, Doc. No. 51, at 3. *See also State v. Thomas,* No. 88–287–III, 1990 WL 29286, 1990 LEXIS 236 (Tenn.Crim.App. March 21, 1990), *aff'd* 813 S.W.2d 395 (Tenn.1991).

After Rule 5.04(e) was struck down, Petitioner argues that there was no state post-conviction procedure available to consider his juror misconduct claim. Even if Petitioner had known of the unpublished opinion in March 1990, it is evident that he would have been barred under then existing state law from raising his juror misconduct claim in a second petition for post-conviction relief due to the fact that his first petition was still pending in the state appellate courts. *See Carter v. State*, 802 S.W.2d 223 (Tenn.Crim. App.1990), *overruled by Laney v. State*, 826 S.W.2d 117 (Tenn.1992). Moreover, by the time Petitioner became aware that Rule 5.04(e) was invalid and then discovered the alleged juror misconduct in October 1990, the applicable three-year statute of limitations on post-conviction proceedings under Tenn.Code Ann. § 40–30–102 had expired. *Traverse*, App. A, Doc. No. 51, at 3–4.

The Magistrate Judge recommends severing Petitioner's third claim so that the state courts may now have an opportunity to "consider recognition of an equitable exception for fundamental fairness or miscarriage of justice to its three year limitations period in Tenn.Code Ann. § 40–30–102." *Report and Recommendation*, Doc. No. 43, at 13. However, this Court finds that Petitioner is excepted from the state exhaustion requirement for this claim because there was an absence of available state remedies at the time he filed his federal petition. *See* 28 U.S.C. § 2254(b); *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. at 1569–70 n. 25; *Meeks*, 749 F.2d at 324.

Although this Court acknowledges the weighty considerations of comity and federalism upon which the Magistrate Judge relied in recommending severance of this claim, the Court recognizes as well that a federal habeas petitioner is not required to pursue a state remedy which is speculative or conjectural. *See Wilwording*, 404 U.S. at 250, 92 S.Ct. at 408–09; *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir.1979) (federal habeas relief available where post-conviction remedy "unavailable" or "ineffective"). Accordingly, this Court finds severance and exhaustion inappropriate here where Petitioner's claim would be returned to the state courts on the

mere speculation that in order to consider the claim the state courts would first carve out an equitable exception to Tenn.Code Ann. § 40–30–102. *See Pillette*, 824 F.2d at 498 (exhaustion not required where requiring further review before state courts "would be futile because state law precludes further review").

The Court rejects the Magistrate Judge's recommendation that Petitioner's third claim should be severed for exhaustion purposes and finds that Petitioner is excepted from the state exhaustion requirement on his third claim. Given the circumstances around which Petitioner was barred from interviewing jurors and thus from properly presenting his juror misconduct claim, the Court finds inapplicable Respondent's argument that Petitioner's third claim is procedurally defaulted.

Accordingly, the Court determines that an Evidentiary Hearing on Petitioner's juror misconduct claim is appropriate at this time.

### B. *Procedural Default*

Petitioner's second, seventh, and ninth claims have been properly presented to the state courts. At issue are Petitioner's first, fourth, fifth, sixth, and eighth claims, which the Magistrate Judge recommends dismissing as procedurally defaulted.

#### 1. Adequate and Independent State Law Ground

A federal habeas court may not review a question of federal law decided by a state court if the decision of that state court rests on an independent and adequate state law ground. *Coleman v. Thompson*, 501 U.S. 722, ——–——, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991), *reh'g denied*, —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). Notably, this rule applies as well to bar federal habeas review when a state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at ——, 111 S.Ct. at 2554. In such an instance, the failure of the petitioner to meet a state procedural requirement would constitute an independent and adequate state law ground for declining to ad-

dress the petitioner's claims. *Id.* The one caveat is that the state procedural rule at issue must be "strictly or regularly followed" in order to be an independent and adequate state law ground. *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (citations omitted).

In the present case, Petitioner argues that his first, fourth, fifth, sixth, and eighth claims are not subject to procedural default analysis because all such claims were properly raised in the state courts.

a. First Claim: Constitutionality of Statute

■ The Magistrate Judge has recommended that Petitioner's first claim be subject to procedural default analysis. This Court rejects the Magistrate's recommendation on the grounds that the first claim has not been barred by the state court on an independent and adequate state law ground. *See Coleman,* 501 U.S. 722, 111 S.Ct. 2546.

Specifically, the state has barred Petitioner's first claim, attacking the constitutionality of the statute under which he was convicted for Count II, on the grounds that Petitioner failed to comply with Tenn.R.Crim.P. 12(b), a rule which requires that certain matters be raised by pretrial motion. The Tennessee state courts have stated in other cases, however, that a constitutional question may be raised at any time, including on appeal. *See, e.g. Capri Adult Cinema v. State,* 537 S.W.2d 896, 900 (Tenn.1976); *Veach v. State,* 491 S.W.2d 81, 83 (Tenn.1973); *State v. Seagraves,* 837 S.W.2d 615, 618 (Tenn.Crim.App. 1992); *State v. Draper,* 800 S.W.2d 489, 497 (Tenn.Crim.App.1990). As well, Tennessee appellate courts may correct constitutional errors "to prevent manifest injustice." *State v. Goins,* 705 S.W.2d 648, 650 (Tenn.1986).

Given that the Tennessee courts allow constitutional challenges at any time, this court finds that Rule 12(b) has not been strictly and regularly followed to bar a constitutional challenge to a state statute which has not been challenged first in a pretrial motion. Accordingly, Petitioner's failure to comply with Rule 12(b) does not constitute an independent and adequate state law ground barring federal habeas review. *See Johnson,* 486 U.S. at 587, 108 S.Ct. at 1987. This Court finds that Petitioner's first claim has not been procedurally defaulted and may be considered by this Court on the merits.

Petitioner challenges the constitutionality of Tenn.Code Ann. § 39–6–1137(a)(9) on the grounds that it was unconstitutionally overbroad, vague, and indefinite at the time he allegedly committed the offense, and was unconstitutionally applied to him at trial.

i. Facial Invalidity

■ Under the First Amendment, a defendant may challenge a statute on the basis of overbreadth regardless of whether the defendant's conduct is constitutionally protected. *Osborne v. Ohio,* 495 U.S. 103, 112 n. 8, 110 S.Ct. 1691, 1697 n. 8, 109 L.Ed.2d 98 (1990) (citing *Massachusetts v. Oakes,* 491 U.S. 576, 581, 109 S.Ct. 2633, 2637, 105 L.Ed.2d 493), *reh'g denied,* 496 U.S. 913, 110 S.Ct. 2605, 110 L.Ed.2d 285 (1990). However, even if a statute as written is overbroad, the statute may nevertheless be construed such that it survives overbreadth scrutiny. *See Osborne,* 495 U.S. at 112–13, 110 S.Ct. at 1698. The statute as constitutionally construed may then be applied to conduct occurring prior to the construction so long as such application provides fair warning to the defendant. *Osborne,* 495 U.S. at 115; 110 S.Ct. at 1699 (citations omitted).

In the present case, the trial court instructed the jury that "sexual conduct" under Tenn.Code Ann. § 39–6–1137 included, among other things, "the *lewd* exhibition of the male or female genitals." *Pet'r's App. Br.,* Ex. F, Doc. No. 3, at 20) (emphasis added). Thus, the trial court's instruction followed the language of the Tennessee Legislature's 1985 amendment and narrowed the statute sufficiently to survive Petitioner's overbreadth challenge.

Moreover, the trial court's narrowing construction may be applied to Petitioner's conduct because Petitioner had notice that his conduct was proscribed. The statute under which he was charged is titled, "Use of minors for obscene purposes;" it prohibits taking obscene pictures of a minor, or promoting or permitting a minor to engage in sexual conduct; and it defines sexual conduct as including the "exhibition of male or female genitals." Given that Petitioner was on no-

tice at the time he allegedly committed the offense that he would be subject to prosecution for taking photographs of a minor which depicted the exhibition of her genitals, he certainly was fairly warned that he would be subject to prosecution for taking photographs of a minor which depicted the "lewd" exhibition of her genitals.

Furthermore, as Petitioner has failed to establish that the statute's prohibitions were not clearly defined, the Court rejects Petitioner's claim that the statute was unconstitutionally vague or indefinite. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

### ii. Invalid as Applied

■ Where a statute is not unconstitutionally overbroad, it may nevertheless be unconstitutional as applied to a defendant. *See, e.g. Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Petitioner thus argues that Tenn.Code Ann. § 39–6–1137(a)(9) was unconstitutionally applied to him in that he was punished for taking photographs of a minor with exposed genitals, conduct which he alleges was constitutionally protected.

■ Although child pornography does not receive protection under the First Amendment, *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), depictions of nudity, without more, constitute protected expression. *Osborne*, 495 U.S. at 112, 110 S.Ct. at 1698. For the nudity to be obscene with respect to minors, it must be "in some significant way, erotic." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 n. 10, 95 S.Ct. 2268, 2275 n. 10, 45 L.Ed.2d 125 (1975). Thus, as courts in other jurisdictions have reasoned, taking nude photographs of children, where the photographs do not display children engaged in sexual activity or lewd display, are not "obscene" merely because children are represented. *See Faloona v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1004 n. 1 (5th Cir.1986), *aff'g* 607 F.Supp. 1341, 1344–45 n. 10 (N.D.Tex.1985), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987); *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 602 F.Supp. 1361, 1369 (D.Minn.1985), *aff'd*, 780 F.2d 1389 (8th Cir.1985); *United States v.*

*Various Articles of Obscene Merchandise*, 460 F.Supp. 826, 830 (S.D.N.Y.1978).

As a preliminary matter, this Court notes that the state courts did not address the merits of Petitioner's constitutional challenge. Any state court factual findings which may relate to this challenge are not entitled to a statutory presumption of correctness by this Court. 28 U.S.C. § 2254(d)(1). Accordingly, the Court has conducted a *de novo* review of the record to make a determination on this issue.

■ Petitioner's argument that the statute was unconstitutionally applied to punish him for constitutionally-protected activity requires a finding by this Court that the allegedly objectionable materials at issue were constitutionally protected and thus not "obscene." The record reflects that the pictures at issue were never introduced at trial. The testimony from the minor involved was that she was in a dress, the dress was "sort of up," and the Petitioner took polaroid photographs of her in various poses: one leg up and one leg down, both legs flat, and legs crossed. *Trial Tr.*, Addendum 12, Vol. I, Doc. No. 28, at 48–51, 53–55. She also testified that the Petitioner took approximately five to seven pictures of her while she was not wearing underwear, but that no pictures were ever taken of her completely nude. *Id.* at 55, 100. The minor stated that she never personally viewed the photographs. *Id.* at 100.

Given that no photographs were introduced at trial and the record is unclear as to whether the photographs at issue were constitutionally protected, the Court finds that a hearing on Petitioner's constitutional challenge to Tenn.Code Ann. § 39–6–1137(a)(9), as applied to him, is appropriate at this time.

### b. Fourth, Fifth, Sixth, and Eighth Claims

■ This Court finds well-founded and accordingly adopts the Magistrate Judge's determination that Petitioner's fourth, fifth, and sixth claims were expressly barred by the Tennessee Court of Criminal Appeals on the grounds that Petitioner failed to adhere to state procedural rules. *See Report and Recommendation*, Doc. No. 43, at 17. As

well, the Court adopts the Magistrate Judge's finding that Petitioner's eighth claim, alleging cumulative error, is subject to the waiver provision of Tenn.Code Ann. § 40–30–112(b)(1) and (2). *Id.* at 18. As such, Petitioner was required to raise the cumulative error claim on direct appeal when the claim could have been raised, and his failure to do so constituted waiver under a state procedural rule.

Petitioner's fourth, fifth, sixth, and eighth claims are subject to procedural default unless he can show cause and prejudice.

### 2. Cause and Prejudice for Procedural Default

 Under the standard enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), a federal habeas petitioner who has procedurally defaulted his claims must establish cause for the procedural default and prejudice attributable thereto in order to obtain federal habeas review of such claims. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). In order to establish cause, the petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. However, if the procedural default results from constitutionally ineffective assistance of counsel, the responsibility for the default is imputed to the state and satisfies the cause requirement. *Id.*

 Petitioner alleges that his state procedural default must be excused because the constitutionally ineffective assistance of trial counsel he received satisfies the cause and prejudice standard. The Court will address Petitioner's ineffective assistance of trial counsel claim on the merits. In making its determination, the Court recognizes that while factual findings of the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), the question of effectiveness of counsel is a mixed questions of law and fact which is subject to a *de novo* review by this Court. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

### a. Ineffective Assistance of Trial Counsel

 A criminal defendant has a Sixth Amendment right to receive effective assistance of counsel. *Strickland,* 466 U.S. at 685–86, 104 S.Ct. at 2063. The standard for establishing "cause" as a result of ineffective assistance of counsel is two-pronged: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064. Mere attorney ignorance or inadvertence will not constitute cause unless the error rises to the level of a constitutional violation. *Coleman,* 501 U.S. ——, 111 S.Ct. at 2566–67.

 In assessing counsel's performance, a reviewing court must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. The court must determine whether under the circumstances counsel's allegedly unreasonable acts or omissions "were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. While strategic choices made after thorough investigation are generally considered within the range of competent assistance, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066.

Petitioner argues that he received constitutionally ineffective assistance of trial counsel on the grounds that counsel (1) failed to attack the constitutionality of Count II prior to trial; (2) failed to move pretrial and at the conclusion of the State's case-in-chief for a dismissal of Count II as a matter of law; (3) failed to object to the introduction of the uncharged rape and other bad acts against Petitioner; (4) failed to object to the trial court's ruling that Petitioner's "consent" de-

fense could not be raised in voir dire or opening statement; (5) failed to object to the State's alleged misconduct and improper closing statement; (6) failed to prepare adequately for trial and to develop available defenses; and (7) failed to preserve the trial record for appellate review. *Pet'r's Objections,* App. A, Doc. No. 47, at 104–121.

■ Because the Court is persuaded that trial counsel was deficient on the basis of trial counsel's failure to challenge the constitutionality of Tenn.Code Ann. § 36–6–1137(a)(9), the statute under which Petitioner was convicted of using a minor for obscene purposes, and counsel's failure to move pretrial and at the conclusion of the State's case-in-chief for a dismissal of Count II as a matter of law, the Court will not address the other errors alleged.

The Sixth Circuit has recognized that an attorney's failure to recognize a change in the law may constitute ineffective assistance of counsel. *See, e.g., Lewandowski v. Makel,* 949 F.2d 884 (6th Cir.1991). In the present case, trial counsel not only failed to recognize a change in Tenn.Code Ann. § 39–6–1137(a)(9), but also failed to conduct a reasonable investigation as to the continuing validity of the statute. *See Post–Conviction Hr'g Tr.,* Addendum 13, Vol. IV, Doc. No. 28, at 245. Moreover, trial counsel failed to move pretrial and at the conclusion of the State's case-in-chief for a dismissal of Count II on the grounds that the allegedly objectionable photographs at issue were never produced at trial. As a result of these errors, the Court finds Petitioner's trial counsel did not render professionally competent assistance. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066.

■ In order for counsel's errors to rise to the level of a constitutional violation and satisfy the "cause" requirement for excusing procedural default, the Court must also determine that trial counsel's deficiencies resulted in prejudice to Petitioner. *Strickland,*

466 U.S. at 687, 104 S.Ct. at 2064. Such a determination requires a finding that it is reasonably probable that trial counsel's failure to challenge the constitutionality of the statute, as well as the charge and conviction under the statute in light of the evidence, resulted in prejudice to the Petitioner in receiving a conviction on Count II. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

As the Court has concluded above in section B(1)(a)(i), Petitioner's challenge to the constitutionality of Tenn.Code Ann. § 39–6–1137(a)(9) on the grounds of overbreadth, vagueness, and indefiniteness is without merit. However, it is unclear at this time whether the statute was unconstitutional as applied to Petitioner. The Court reserves its decision as to the constitutionality of the statute pending further proceedings.

b. Sufficiency of Evidence under Count II

■ A finding of obscenity must be based upon a review of the material in its entirety. *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501, 105 S.Ct. 2794, 2800, 86 L.Ed.2d 394 (1985); *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. Obscenity may not be presumed merely on the basis of conclusory statements about the material by an individual. *Roaden v. Kentucky,* 413 U.S. 496, 506, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). The allegedly obscene material must be viewed by a judge or jury, and the work taken as a whole must be found to meet the three-part *Miller* test.[1] *Brockett,* 472 U.S. at 501, 105 S.Ct. at 2800; *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. *See also United States v. Tupler,* 564 F.2d 1294 (9th Cir.1977) (contents of allegedly sexually graphic films must be reviewed prior to valid seizure); *United States v. Pryba,* 674 F.Supp. 1518, 1522 (E.D.Va.1987) ("[t]here is no presumption of obscenity that arises from circumstances or from the fact that material is sexually explicit"), *aff'd,* 900 F.2d 748 (4th Cir.1990); *United States v. Miscellaneous Pornographic Magazines, etc.,* 526 F.Supp. 460 (N.D.Ill.1981) (holding that determina-

---

1. In order to make a finding that material is obscene, the Supreme Court in *Miller* offered the following test: (1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (2) whether the work, depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615.

tion of whether foreign material is obscene requires translation of text).

■ It is undisputed that the allegedly objectionable photographs which led to Petitioner's conviction under Tenn.Code Ann. § 39–6–1137 were never introduced to the trial court judge or jury, nor were they submitted during any post-conviction proceedings. There was no trial testimony regarding the actual content of the photographs. The minor involved testified that she was never completely nude when any photograph was taken, though she stated that she was at least partially nude when some of the pictures were taken. *Trial Tr.,* Addendum 12, Vol. I, Doc. No. 28, at 55, 100. The minor's mother testified that she had asked and her daughter had denied that any pictures had been taken of her in the nude. *Trial Tr.,* Addendum 12, Vol. IV, Doc. No. 28, at 473. At Petitioner's post-conviction hearing, Petitioner's wife testified that she saw the photographs in question and that the minor involved was not nude in any of the pictures. *Post–Conviction Hr'g Tr.,* Addendum 13, Vol. IV, Doc. No. 28, at 196–97.

The record in this case also reflects, however, that during a taped phone conversation, Petitioner made a statement to his girlfriend, Cornelia "Connie" Widmann, that "when you take pictures of a girl that age like that, that's child pornography." *Pet'r Phone Conversation,* Addendum 12, Vol. Ex.'s, Doc. No. 28. As well, Ms. Widmann gave a police statement on December 10, 1984, in which she reported that Petitioner told her that "he had a client that paid him big money to see pictures of little girls in their underwear and that he would give [her] half of it." *Widmann Police Statement,* Addendum 12, Vol. Ex.'s, Doc. No. 28, at 22.

Given the evidence in the record, the Court determines that a hearing is necessary at this time to determine the merits of Petitioner's second claim alleging that he was unconstitutionally convicted under Count II on insufficient evidence. The Court notes that a determination on the sufficiency of the evidence will likely be enmeshed in a determination on whether Tenn.Code Ann. § 39–6–1137(a)(9) was unconstitutionally applied to Petitioner.

Because the Court finds that further proceedings are necessary to determine whether there is a reasonable probability that a constitutional challenge to Tenn.Code Ann. § 39–6–1137(a)(9) or to the sufficiency of the evidence under which Petitioner was convicted would have resulted in a more favorable outcome to Petitioner, the Court also reserves its decision and will hear further argument on Petitioner's ineffective assistance of trial counsel claim. Furthermore, the Court reserves its decision on Petitioner's ineffective assistance of appellate counsel claim at this time.

### III. CONCLUSION

Because the Court finds some of Petitioner's objections to be meritorious, the Court rejects the Report and Recommendation in part. Accordingly, the Court orders that an Evidentiary Hearing be held on Petitioner's juror misconduct claim. Furthermore, the Court orders that Oral Argument be held on Petitioner's challenge to the constitutionality of Tenn.Code Ann. § 39–6–1137 as applied to him; on Petitioner's claim that he was convicted of violating Tenn.Code Ann. § 39–6–1137 on insufficient evidence; and on Petitioner's claim that he received ineffective assistance of trial counsel. The Court reserves its decision on whether Petitioner received ineffective assistance of appellate counsel; and reserves its decision on Petitioner's Petition for Writ of Habeas Corpus.