97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lawtis Donald RHODEN, Petitioner-Appellant,
v.
Jack MORGAN, Warden; State of Tennessee; Charles W.
Burson, Attorney General, State of Tennessee,
Respondents-Appellees.
 No. 95-5224.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1996.
 
 Before: MILBURN and BOGGS, Circuit Judges; and BORMAN, District Judge.*
 PER CURIAM.
 
 Synopsis
 
 1
 Appellant was convicted on October 23, 1985 by a jury in Davidson County, Tennessee, of two crimes: (1) rape, and (2) use of a minor for obscene purposes (photography). He was sentenced to 20 years imprisonment on each count of conviction, to be served consecutively. After the Tennessee state courts affirmed his convictions, Appellant filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Tennessee. The district court affirmed the rape conviction, but reversed his second count of conviction (obscene photography of a minor) on the ground that the statute was unconstitutional as applied.[1] Appellant appeals from the District Court's order denying his request for relief from the rape conviction. The state does not appeal from the District Court's reversal of the second count of conviction.
 
 Procedural History
 
 2
 After Appellant's conviction on the two aforementioned counts in Davidson County (Nashville), Tennessee, his Motion for New Trial was denied on June 27, 1986. His convictions and sentences were affirmed on direct appeal by the Tennessee Court of Criminal Appeals on April 16, 1987; State v. Rhoden, 739 S.W.2d 6 (Tenn.Crim.App.1987).[2] The Tennessee Supreme Court denied review on October 5, 1987.
 
 
 3
 Appellant filed a state post-conviction petition on February 16, 1988, which was denied by the trial court on March 17, 1987. The Tennessee Court of Criminal Appeals affirmed the trial court's decision on February 21, 1991; Rhoden v. State, 816 S.W.2d 56 (Tenn.Crim.App.1991). The Tennessee Supreme Court denied Appellant's application for permission to appeal on July 1, 1991.
 
 
 4
 Appellant filed a petition for a Federal writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 17, 1991. On August 19, 1991, Appellant filed a second, "amended" petition. On January 13, 1992, the Federal District Court consolidated these petitions.[3]
 
 
 5
 The District Court referred Appellants claims to a Magistrate Judge. On April 26, 1993, the Magistrate Judge's Report and Recommendation (R & R) rejected all of Appellant's claims except for juror misconduct, which was dismissed without prejudice for failure to exhaust state remedies. Appellant timely filed objections to the R & R.
 
 
 6
 On January 19, 1994, the District Court rejected in part the Magistrate Judge's R & R, and ordered: (1) an evidentiary hearing on the juror misconduct claim; (2) oral argument on petitioner's challenge to (a) the constitutionality of the obscene photograph of a minor statute as applied to Appellant, and (b) the sufficiency of the evidence on the obscene photograph count of conviction. Rhoden v. Morgan, 846 F.Supp. 598 (M.D.Tenn.1994). The District Court reserved decision on the ineffective assistance of counsel issue, and on the petition for writ of habeas corpus.
 
 
 7
 On August 24, 1994, the District Court granted the writ in part, holding unconstitutional Appellant's conviction on count two--use of a minor for obscene purposes (photography).[4]
 
 
 8
 On September 16, 1994, Appellant filed with the District Court a Motion to Alter or Amend. On December 13, 1994, the District Court entered an order denying relief on the ground that "the motion is not well-taken."
 
 
 9
 On December 16, 1994, Appellant filed a timely notice of appeal, and application for certificate of probable cause. On January 12, 1995, the District Court granted the certificate of probable cause to appeal.
 
 
 10
 Appellant's Brief raised three issues for review:
 
 I.
 
 11
 "WAS MR. RHODEN DENIED A FUNDAMENTALLY FAIR TRIAL BY AN IMPARTIAL JURY IN VIOLATION OF U.S. CONSTITUTION AMENDMENTS 5, 6, 14, DUE TO JUROR BIAS?
 
 II.
 
 12
 DID THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS DENY MR. RHODEN THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY U.S. CONSTITUTION AMENDMENTS 6, 14?
 
 III.
 
 13
 HAS MR. RHODEN MET THE "CAUSE" AND "PREJUDICE" STANDARD OF WAINWRIGHT V. SYKES, 433 U.S. 72 (1977), WHICH NOW ENTITLES HIM TO A REVIEW ON THE MERITS OF HIS PROCEDURALLY DEFAULTED HABEAS CLAIMS NUMBER 4 [IMPROPER ADMISSION OF AN UNCHARGED RAPE], 5 [PRECLUSION OF CONSENT DEFENSE IN VOIR DIRE AND OPENING STATEMENT], AND 6 [PROSECUTORIAL MISCONDUCT]?"
 
 
 14
 Appellant's Brief at 1.
 
 Discussion
 
 15
 I. Was Mr. Rhoden denied a fundamentally fair trial by an impartial jury in violation of U.S. Constitution Amendments 5, 6, 14, due to juror bias?
 
 
 16
 At Appellant's voir dire in the state court trial in 1985, a female juror was asked if she had ever been the victim of a crime. She responded "no, sir." Appellant claims that this juror deliberately concealed the fact that she had been raped in 1982, that at the time of this jury service she was outraged by her rape, and accordingly, that she was not an impartial and unbiased juror. This Court rejects this claim.
 
 
 17
 Appellant's claims of prejudice were not supported by juror Susan Palinosky's testimony at the Federal District Court's hearing on May 9, 1994. The juror testified:
 
 
 18
 1. that she had experienced a sexual encounter with a male acquaintance in 1982.
 
 
 19
 2. that at the time of this 1982 encounter, and subsequently, through the time of the instant 1985 trial, she was not certain that she had been the victim of a sexual assault: "I didn't have any knowledge of that particular aspect of [date or acquaintance] rape at that time." Joint App. at 440.
 
 
 20
 3. that it was not until two years after the instant trial, in 1987, when she began reading college student newspaper stories about date rape and acquaintance rape, that she understood that what had happened to her in 1982 was in fact a rape. Id. at 447.
 
 
 21
 4. that at the time this trial began, she thought she could be impartial. Id. at 442.
 
 
 22
 5. that during the course of this trial, while sitting as a juror, "I do not consciously remember having any feelings of bias." Id. at 453.
 
 
 23
 6. that she did not realize until 1987 that what had happened to her in 1982 was a crime. Id. at 449.
 
 
 24
 7. that to the best of her knowledge, at the time of the voir dire question, she did not lie when she said that she was not the victim of a crime; that this answer was her honest opinion and not untrue at the moment when she answered the question.
 
 
 25
 8. that the gravamen of this issue came "forth through my therapy" after her service as a juror.
 
 
 26
 9. that she was not conscious of this issue in 1985 when the trial took place. Id. at 467.
 
 
 27
 The District Court concluded that, on the basis of the juror's testimony, she "did not deliberately conceal the fact that she had been the victim of a crime." Rhoden, 863 F.Supp. at 616. This Court finds that the relevant facts do not support Appellant's claim that Susan Palinosky was not a fair and impartial juror at the 1985 trial. The juror did not fail to disclose material information during the voir dire; she answered the questions truthfully at that time. There is no evidence of bias by this juror at the 1985 trial. There has been no diminution of the right guaranteed by the Supreme Court's decision in Irvin v. Dowd, 366 U.S. 717, 721-23 (1961), "A criminal defendant has a constitutional right to a fair trial before an impartial trier of fact." Id.
 
 
 28
 The Supreme Court further held in Patton v. Yount, 467 U.S. 1025, 1036 (1984), that the question of whether jurors have opinions that disqualify them is not a mixed question of law and fact, but instead "one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." In the instant case, the historical facts as developed at the District Court's evidentiary hearing established that at the time of the trial the juror acted in a fair and impartial manner.
 
 
 29
 A District Court's factual findings are to be upheld unless they are clearly erroneous. In the instant case, the District Judge's findings are supported by her testimony at the District Court hearing.
 
 
 30
 There is no evidence that this juror failed to disclose material information during the 1985 voir dire that supports Appellant's claim under United States v. Patrick, 965 F.2d 1390, 1399 (6th Cir.), cert. denied, 506 U.S. 940 (1992), that he was deprived of his constitutional right to a fair trial by an impartial jury.
 
 
 31
 II. Did the cumulative effect of trial counsel's errors deny Mr. Rhoden the effective assistance of counsel guaranteed by U.S. Constitution Amendments 6, 14?
 
 
 32
 Appellant's brief listed, in a footnote, seven matters that he alleges had been raised before the District Court evidencing ineffective assistance of trial counsel (at 27, note 6):
 
 
 33
 (1) Failed to attack the constitutionality of Count II prior to trial;
 
 
 34
 (2) Failed to move pretrial and at the conclusion of the State's case-in-chief for a dismissal of Count II as a matter of law;[5]
 
 
 35
 (3) Failed to object to the introduction of the uncharged rape and other bad acts against Appellant;
 
 
 36
 (4) Failed to object to the trial court's ruling that Appellant's "consent" defense could not be raised in voir dire or opening statements;
 
 
 37
 (5) Failed to object to the State's alleged misconduct and improper closing statements;
 
 
 38
 (6) Failed to prepare adequately for trial and to develop available defenses; and
 
 
 39
 (7) Failed to preserve the trial court record for appellate review.
 
 
 40
 This opinion will deal with these matters seriatim.
 
 
 41
 (1) Appellant asserts as erroneous the district court finding that as to Count 2, Appellant failed to demonstrate prejudice as required under the second prong of the Strickland test, resulting from trial counsel's failure to challenge the constitutionality of the state's prosecution of Count 2. This Court concludes that this issue need not be addressed, because the conviction on Count 2 was vacated by the district judge. The issue at hand is whether trial counsel was guilty of ineffective assistance of counsel as to Count 1. At the same time, this Court does not ignore counsel's conduct regarding Count 2 insofar as it bears on the issue of effective assistance of counsel as to Count 1.
 
 
 42
 (2) Appellant contends that the " 'spill over' from the proofs on Count 2 prejudiced his trial on the defense of Count 1", and that this would not have occurred had counsel moved pretrial, and at the conclusion of the State's case-in-chief, for dismissal of Count 2 as a matter of law.
 
 
 43
 Appellant's counsel assumes that the trial judge would have dismissed Count 2 had a motion been brought. This flies in the face of the fact that the trial court rejected Appellant's challenge to the constitutionality of this statute in his post-trial motion for a new trial. Further, the Tennessee Court of Appeals, in dicta, rejected Appellant's argument for dismissal of Count 2 in State v. Rhoden, 816 S.W.2d 56, 61 (Tenn.Crim.App.1991):
 
 
 44
 It should be noted that the statute in question has never been declared unconstitutional.... If this issue had been addressed on the merits, the appellant would not have been entitled to relief from his conviction.
 
 
 45
 Accordingly, it is not likely that the trial judge would have dismissed Count 2 had trial counsel filed a motion to dismiss that count.
 
 
 46
 Further, Appellant's counsel also assumes, incorrectly, that had Count 2 been dismissed, none of the evidence relevant to Count 2 would have been admissible on the Count 1 rape charge. Given the fact that Appellant's scheme relating to taking the child's pictures established the scenario for the rape, most of the Count 2 evidence would have been admissible on the Count 1 prosecution.
 
 
 47
 Further, Appellant's referral in his conversations with his live-in girlfriend Connie Widmann to "little girls," and "a girl that age" (Appellant's Brief, at 34), would also have been admissible on the rape count as evidence that he was aware of her tender age, with regard to the issue of consent/lack of consent/rape. These references to the victim also related to Ms. Widmann's testimony that, in addition to buying clothes for the victim, Appellant also bought her a box of candy and a teddy bear. (Trial Transcript, Testimony of Connie Widmann, at 151).
 
 
 48
 Finally, as to the "spill over" claim, the Court notes the following unchallenged factual findings in the District Court opinion:
 
 
 49
 There was no trial testimony regarding the actual content of the photographs.... The minor's mother testified that her daughter had denied that any pictures were taken of her while she was nude.
 
 
 50
 Rhoden, 863 F.Supp. at 616. Since there was no introduction of any of the allegedly obscene photographs, and other evidence of the picture scenario was admissible on Count I, Appellant's claim of spillover prejudice from Count 2 has been rebutted.
 
 
 51
 (3) Appellant alleges that prejudice resulted from the introduction of evidence of an "alleged prior rape," (Appellant's Brief at 35) and/or "uncharged rape" involving a woman other than the count 1 rape victim, to wit Connie Widmann, Appellant's then-girlfriend. Appellant has not pointed to, and cannot point to any trial testimony mentioning the term "rape", apart from the testimony relating to the Count 1 rape of the victim.
 
 
 52
 Appellant's "rape" claim related to testimony by Appellant's then live-in girlfriend, Connie Widmann, that on one occasion during their extended relationship, Appellant forced her to have sex because he was angry that she had gone out with another man. This testimony came out when Appellant's counsel, in cross-examination, tried to establish that Appellant did not have any influence over Ms. Widmann.
 
 
 53
 This Court rejects Appellant's allegation of prejudice based upon testimony that on one occasion over a long intimate relationship, Appellant forced Ms. Widmann to engage in sex with him.
 
 
 54
 Initially, this Court notes that the term "rape" was never mentioned in Widmann's testimony. Thus, the alleged prejudice by the use of the term "rape" in this testimony did not occur. Secondly, Appellant's trial counsel effectively made a non-issue of this one-time incident during an extended relationship, by establishing that Ms. Widmann had otherwise voluntarily engaged in a sexual relationship with Appellant over an 18-month period.
 
 
 55
 A second aspect of Appellant's referenced third claim before the District Court was the allegation that trial counsel failed to object to the introduction of other bad acts evidence--Appellant's use of numerous aliases and false identification. This Court questions the adverse impact of that evidence on Appellant's case since the use of aliases or false identification is not itself a crime, and was never alleged to have been connected to any specific criminal activity by Appellant, e.g. fraud, bad checks. Indeed, there was testimony that Appellant provided a legitimate explanation for this conduct--that he used false names so he would not be robbed.[6] (Trial Transcript, Vol. 1, p. 136, testimony of Connie Widmann). Further, the identity of the individual charged with the crime of rape was not an issue in this trial. Accordingly, this Court rejects Appellant's claim that introduction of this evidence prejudiced Appellant's right to a fair trial, or that counsel's failure to object to this testimony evidenced ineffective assistance of counsel.
 
 
 56
 This Court further finds that testimony that Appellant had previously taken semi-nude photos of Ms. Widmann, his long-time girlfriend, did not significantly prejudice Appellant's right to a fair trial on the rape issue. It is not asserted that it was a violation of law to take a semi-nude picture of an adult woman. Indeed, it could be argued that because Appellant had previously taken such pictures, such activity was not tied to criminal behavior, and thus his taking of pictures of the young girl was not evidence of a plan to commit a rape.
 
 
 57
 This Court concludes that the unobjected to admission of the above-discussed evidence did not amount to ineffective assistance of trial counsel under Strickland. The term "rape" was never mentioned in Ms. Widmann's testimony, use of aliases is not necessarily criminal behavior, nor is taking semi-nude pictures of an adult woman. However, even if some of this evidence might be deemed inadmissible, none of it was highly prejudicial. Further, it could well have been deemed a matter of strategy for trial counsel to have refrained from objecting to this collateral factual testimony, where it is not prejudicial as to the ultimate issue. This strategy would avoid drawing attention to that testimony, and avoided the scenario of defense counsel making constant objections before the jury thereby implying that his client had something to hide. The Supreme Court noted in Strickland v. Washington, 466 U.S. 668, 689 (1984):
 
 
 58
 Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted).
 
 
 59
 This Court concludes both that under the standard of deference established in Strickland, trial counsel's conduct was not such as to rebut this presumption of reasonable professional assistance, and also that the evidence itself was not so prejudicial as to produce a conviction when the issue would otherwise have been in doubt.
 
 
 60
 (4) Appellant alleges that trial counsel's failure to object to the trial court's ruling that the "consent" defense could not be raised in voir dire and opening statements evidenced ineffective assistance of counsel. (Appellant's Brief at 41). This Court rejects this claim.
 
 
 61
 There is no evidence that the trial judge precluded Appellant's trial counsel from raising the consent issue while cross-examining prosecution witnesses, while examining defense witnesses, or in closing argument. Even if the trial court erred in restricting counsel from raising the consent defense issue in voir dire and in his opening argument, any error was dissipated insofar as that issue was available to be fully presented to the jury during the evidentiary phase of the trial and in closing argument.
 
 
 62
 Finally, with regard to Appellant's assertion that counsel should have used the voir dire to argue his "consent" strategy to the jury, this Court notes that it is not proper to use voir dire to argue legal issues to jurors. Voir dire is a search for the individual's qualifications to sit as a fair and impartial juror, i.e. can the juror be unbiased and fair--not an advocacy phase of the trial. The American Bar Association Standards for Criminal Justice: Defense Function (3d ed. 1993), state as follows:
 
 Standard 4-7.2 Selection of Jurors
 
 63
 * * *
 
 
 64
 (c) The opportunity to question jurors personally should be used solely to obtain information for the intelligent exercise of challenges. Defense counsel should not intentionally use the voir dire to ... argue counsel's case to the jury.[7]
 
 
 65
 (5) Appellant also alleges prosecutorial misconduct not objected to by his trial counsel: commenting on Appellant's failure to testify; vouching for the credibility of prosecution witnesses. This Court notes that Appellant's 50-page (maximum limit) brief did not set forth any argument on these issues, but instead referred the Court to the joint appendix, in which appellant had included his 134-page brief filed in the District Court, for "facts, arguments and law". This Court declines Appellant's suggestion, and limits its scrutiny to the plethora of issues raised and argued in Appellant's 50-page brief to this Court. This Court has recently noted with approval, "that it is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.' " United States v. Elder, --- F.3d ---- Nos. 94-5307, 95-5309/5310/5331/5332/5391/5393/5395/5397, 1996 WL 411843 (6th Cir. July 24, 1996) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990)).
 
 
 66
 Accordingly, this Court concludes, for the reasons set forth in this discussion, that Appellant was not deprived of the effective assistance of counsel.
 
 
 67
 III. Has Mr. Rhoden met the "cause" and "prejudice" standard of Wainwright v. Sykes, 433 U.S. 72 (1977), which now entitles him to a review on the merits of his procedurally defaulted habeas claims number 4 [improper admission of an uncharged rape], 5 [preclusion of consent defense in voir dire and opening statement], and 6 [prosecutorial misconduct]?
 
 
 68
 Appellant asserts in his brief that the requirement of "Cause and Prejudice" has been satisfied on the procedurally defaulted claims numbered 4, 5 and 6, because establishing ineffective assistance satisfies the "cause" prong of the two-pronged standard to overcome state procedural defaults. (Appellant's Brief at 47).
 
 
 69
 This Court has found that there is no basis for Appellant's claims of prejudice relating to the alleged charged rape, or the preclusion of consent defense in voir dire and opening statement. This Court does not have before it, from Appellant's brief, specific evidence and argument that supports a claim of prosecutorial misconduct.[8] Further, even if Appellant could establish prosecutorial misconduct not objected to by trial counsel, and could establish that this resulted in ineffective assistance of counsel--"cause"--Appellant must still prove prejudice, "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland v. Washington, 466 U.S. 668, 693 (1984).
 
 
 70
 To establish prejudice, Appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The ultimate question of effectiveness of counsel is a mixed question of law and fact subject to de novo review in this Court.
 
 
 71
 Appellant's Brief asserts a generalized claim that his trial counsel failed to object to the prosecution's numerous instances of misconduct and improper arguments. As previously noted, the specifics of those arguments are not to be found in Appellant's 50-page brief. Instead, Appellant directs this Court to seek out the "specific instances of misconduct and improper arguments" from his 134-page brief that was filed in the District Court, and now included in his Appendix.[9] This Court declines to utilize the brief submitted to the District Court as an improper addition to this appellate brief by over 100 pages, for the reasons previously set forth.[10]
 
 
 72
 Appellant's brief also appears to be seeking to argue the issue of sufficiency of the evidence on Count One, under the guise of ineffective assistance of counsel:
 
 
 73
 In Appellant's rape trial, the evidence demonstrated that no weapons, threats of violence, or physical force was utilized against the minor prosecutrix Kimberly Wright. As set forth above, Ms. Wright testified that she wasn't forced to submit to sexual acts with Mr. Rhoden. Moreover, the alleged victim's mother, Elizabeth Wright, testified as a defense witness at the trial, contradicting much of her daughter's testimony. Surely, in light of these facts, it can be concluded that but for counsel Wilson's ineffective assistance delineated above, it is reasonably probable that the result of the trial would have been different. The jury reasonably could have acquitted Mr. Rhoden or convicted him of a lesser included offense, Therefore, Appellant has met the prejudice prong of Strickland entitling him to habeas relief.
 
 
 74
 Appellant's Brief at 45 (emphasis in original) (citations omitted).
 
 
 75
 The Court rejects this argument. The Court does not accept Appellant's description of this as a weak case on behalf of the prosecution. The victim's trial testimony clearly indicated that she was afraid of Appellant, who was over 6 feet tall and who had stated to her that he was a fourth degree black belt in karate. The victim's testimony also was that Appellant utilized vaseline during his three separate incidents of inflicting himself sexually upon her. This Court does not conclude that Appellant's counsel rendered ineffective assistance. Nor does this Court conclude that even if there was ineffective assistance, that it is reasonably probable that the result of the trial would have been different, i.e., acquittal, or conviction on a lesser included offense.
 
 
 76
 The United States Supreme Court, in Strickland v. Washington, 466 U.S. 668 (1984), set forth the following benchmark for evaluating a claim of ineffective assistance of counsel:
 
 
 77
 The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
 
 
 78
 Id. at 686.
 
 
 79
 Strickland set forth the following parameters for a court's evaluation of a claim of ineffective assistance of counsel:
 
 
 80
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 81
 Id. at 687.
 
 
 82
 * * *
 
 
 83
 [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.... [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and make all significant decisions in the exercise of reasonable professional judgment.
 
 
 84
 Id. at 690.
 
 
 85
 The Court further noted that "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. The defendant also has the following burden:
 
 
 86
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 
 87
 Id. at 694. The Supreme Court pointed out in Lockhart v. Fretwell, 506 U.S. 364, 372 (1993), that the " 'prejudice' component of the Strickland test ... focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." In the final analysis under Strickland, the question comes down to this:
 
 
 88
 When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
 
 Strickland, 466 U.S. at 695.[11]
 
 89
 This Court concludes that Appellant has not met the "cause and prejudice" standard to receive a review on the merits of his procedurally defaulted claims. However, even if this standard had been met, Appellant's claims set forth in Argument III do not entitle him to relief. IV. Accordingly, the judgment of the district court, denying appellant's petition for a writ of habeas corpus under 28 U.S.C. § 2254, is AFFIRMED.
 
 
 
 *
 The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The District Court did not hold, as to Count 2, that Petitioner had been deprived of effective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Although the District Judge concluded that trial counsel's conduct fell below an objective standard of reasonableness, the Judge found that Petitioner failed to establish that but for counsel's failures, he would likely not have been convicted. Rhoden v. Morgan, 863 F.Supp. 612, 621 (M.D.Tenn.1994)
 
 
 [2]
 This opinion set forth the following salient facts relating to the rape conviction:
 The appellant instructed his girl friend, Cornelia "Connie" Widmann, to travel to Nashville, ... and make arrangements to rent a furnished room in the Nashville area. After arriving in Nashville Ms. Widmann ... rented a room in the Wright household.
 When the appellant discovered there was a thirteen-year-old child in the home with Ms. Widmann, he asked Ms. Widmann to inquire if the child, the victim, would be interested in being a model and having her picture taken by the appellant. The appellant talked to the victim by telephone about a photographic session. The victim was told that the pictures were to be taken for a photography class.
 During the first week in December of 1984 the appellant went to Nashville, and met Ms. Widmann. They went to a local store where they purchased cameras, film and clothes to be worn by the victim. The following day Ms. Widmann went to the victim's school, obtained her release without the permission of her parents, and took the victim to a local motel where the appellant was residing. The victim took a shower, and Ms. Widmann assisted her with makeup and her hair. When the victim tried on some of the clothes purchased by the appellant, it was discovered the clothes did not fit. The appellant ordered Ms. Widmann to return to the store and exchange the clothes. She left the motel.
 While Ms. Widmann was away from the room, the appellant first took pictures of the victim in her clothes. He also lifted her dress and took pictures of her. Subsequently, the appellant removed the victim's clothing except for her bra while she was on a bed. He performed cunnilingus on the victim, and attempted to insert his penis into her vagina on three separate occasions. The victim testified the appellant penetrated her on one occasion. He then took pictures while she laid on a bed and sat in a chair in an unclothed state.... When he finished taking photographs, the victim dressed; and the appellant prepared to leave for the airport. He told the victim he would give her a computer and $500.00 if she would not tell her mother about what had transpired at the motel.
 Ms. Widmann took the appellant to the airport while the victim waited in the motel room. The appellant told Ms. Widmann that he had a client who would pay a considerable sum of money to see a little girl in her underwear; and he agreed to give Ms. Widmann half of the proceeds from the sale of the photographs. Later that night the appellant called Ms. Widmann on two occasions, and he wanted to know if the victim had revealed what had occurred at the motel. He subsequently told Ms. Widmann the pictures he took of the victim constituted child pornography and it was a felony.
 A medical examination of the victim revealed the presence of sperm. It also revealed recent trauma to the hymenal area inside the vagina and hematoma. According to the doctor, there had to be some type of penetration of the labia to cause this trauma. The slides made by the doctor revealed the presence of a small amount of sperm.
 State v. Rhoden, 739 S.W.2d 6, 9-10 (Tenn.Crim.App.1987).
 
 
 [3]
 The consolidated petitions set forth nine claims:
 (1) Petitioner was convicted of a state obscenity statute that was unconstitutionally vague, overbroad, and indefinite on its face and as applied to him in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution;
 (2) Petitioner's state conviction for Count II, a violation of Tenn.Code Ann. § 39-6-1137, cannot be sustained as a matter of law because the evidence was insufficient under First and Fourteenth Amendment standards;
 (3) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the First, Sixth, and Fourteenth Amendments to the United States Constitution due to juror misconduct and bias;
 (4) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to the improper admission of a prior uncharged rape during the State's case-in-chief;
 (5) Petitioner was denied a fundamentally fair trial by an impartial jury and the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because the trial court precluded him from raising his "consent" defense during voir dire and opening statements;
 (6) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to the State's prosecutorial misconduct and improper closing arguments;
 (7) Petitioner was denied constitutionally effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution;
 (8) Petitioner was denied a fundamentally fair trial by an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to the cumulative effect of the errors alleged herein.
 (9) Petitioner was denied constitutionally effective assistance of appellate counsel due to the failure of appellate counsel to exhaust issues now subject to the defense of failure to exhaust remedies and/or procedural default.
 Rhoden v. Morgan, 863 F.Supp. 612, 615 (M.D.Tenn.1994).
 
 
 [4]
 This disposed of Appellant's claims numbered one and two relating to his count two conviction, set forth in footnote four, supra. As to the remaining seven claims, the court dismissed on the merits claim three--juror misconduct, claim seven--ineffective assistance of trial counsel, and claim nine--ineffective assistance of appellate counsel, and dismissed as procedurally defaulted, claims four--admission of uncharged rape; five--preclusion of consent defense in voir dire and opening statement; six--prosecutorial misconduct; and eight--cumulative effect of errors. Rhoden v. Morgan, 863 F.Supp. 612, 622 (M.D.Tenn.1994)
 
 
 [5]
 Issues 1 and 2 relate to Appellant's Count 2 conviction which has been vacated by the District Court
 
 
 [6]
 See, United States v. Sokolow, 490 U.S. 1, 8 (1989):
 [C]ertainly instances are conceivable in which traveling under an alias would not reflect ongoing criminal activity: for example, a person who wished to travel to a hospital or clinic for an operation and wished to conceal that fact.
 
 
 [7]
 A parallel provision applies to prosecutors: A.B.A. Standards for Criminal Justice: Prosecution Function (3d ed. 1993) Standard 3-5.3
 
 
 [8]
 Appellant's brief on appeal set forth these allegations of improper conduct:
 The State's questioning of Appellant's girlfriend Connie Widmann of his use of aliases and false ID, his taking semi-nude pictures of her and the fact that "Appellant raped Ms. Widmann prior to the alleged offenses in this case." (Appellant's Brief at 44).
 This Court has determined that despite Appellant's underlining of the term "rape," there was no use of the term "rape" in Ms. Widmann's testimony. The claim of prosecutorial misconduct for the questioning regarding use of aliases and false identification has been previously discussed, supra page 12.
 
 
 [9]
 Appellant's brief is replete with references to that District Court brief. Appellant's brief states, at page 36:
 Appellant filed a Brief on August 19, 1991, in Case No. 3:91-0663, in support of his instant habeas petition (R.2, Brief). See [footnote # 6, ante]. Mr. Rhoden argued in his Brief that he was denied effective assistance of trial counsel due to counsel's numerous errors and deficiencies.
 Later in Appellant's Brief, under the heading "Numerous Errors of Trial Counsel Which Prejudiced Mr. Rhoden's Defense," Appellant directs this Court to that district court brief to find support for his claims:
 See Habeas Claim # 4 in Mr. Rhoden's brief filed August 19, 1991, in Case No. 3:91-0663 (R.2, pp. 59-57) [sic], for arguments on the merits of why this prejudicial evidence [introduction of an uncharged rape and other bad acts charged] denied Appellant a fundamentally fair trial....
 Appellant's Brief at 37.
 ....
 Appellant clearly sets forth under Claim 5, pp. 78-85 in his 8-19-91 brief, filed in the district court.... Appellant urges the Court to consider the arguments in this brief in deciding the instant Sixth Amendment claim.
 Appellant's Brief at 42, n. 16.
 ....
 Counsel Wilson rendered ineffective assistance when he failed to object to the state's numerous instances of misconduct and improper arguments. [R.2, Brief, pp. 113-115]. Mr. Rhoden has set forth the specific instances of misconduct and improper closing arguments by the prosecution under [Claim 6, R.2, Brief pp. 86-89].
 Appellant's Brief at 43.
 ....
 For the sake of brevity, Appellant respectfully refers to Court to arguments and law in his Brief which demonstrate how and why he was deprived of a fair trial on this constitutional issue.
 Appellant's Brief at 45.
 ....
 
 
 [4]
 Failure to Adequately Prepare for Trial
 ... For the sake of brevity, please refer to [R.2, Brief, pp. 104-108, 115-119] for Appellant's facts, arguments, and law in this regard.
 Appellant's Brief at 46.
 * * *
 Mr. Rhoden had clearly demonstrated in arguing the merits of his habeas claims 4, 5, and 6, that he has suffered actual prejudice from the constitutional errors defaulted by trial counsel. [See the substantive arguments on these issues in Mr. Rhoden's Brief filed on 8-19-91 ...].
 Appellant's Brief at 48.
 
 
 [10]
 Appellant's brief has raised significant major legal issues, and has briefed them extensively (Impartial Jury at 11-25; Trial Counsel's Errors at 26-46). The Supreme Court pointed out in Jones v. Barnes, 463 U.S. 745, 752 (1983):
 An authoritative work on appellate practice observes:
 "Most cases present only one, two, or three significant questions.... [T]he effect of adding weak arguments will be to dilute the force of the stronger ones." R. Stern, Appellate Practice in the United States 266 (1981).
 ....
 A brief that raises every colorable issue runs the risk of burying good arguments.... Despite the cautionary advice in Barnes, Appellant's brief, after presenting extensive argument on significant questions, noted many additional arguments without briefing them.
 
 
 [11]
 The Supreme Court also noted in Strickland: "[T]he presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment." Id. at 697. This is just such a case: a collateral attack on a state criminal judgment