# JOHNSON *v.* MISSISSIPPI

No. 87–5468.   Argued April 25, 1988—Decided June 13, 1988

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 591. WHITE, J., filed a concurring opinion, in which REHNQUIST, C. J., joined, *post*, p. 591. O'CONNOR, J., concurred in the judgment.

*Floyd Abrams* argued the cause for petitioner. With him on the briefs were *Laurence T. Sorkin, Marshall Cox, Anthony Paduano,* and *Clive A. Stafford Smith.*

*Marvin L. White, Jr.,* Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief was *Mike Moore,* Attorney General.*

JUSTICE STEVENS delivered the opinion of the Court.

In 1982, petitioner was convicted of murder and sentenced to death. The sentence was predicated, in part, on the fact that petitioner had been convicted of a felony in New York in 1963. After the Mississippi Supreme Court affirmed petitioner's death sentence, the New York Court of Appeals reversed the 1963 conviction. Petitioner thereafter unsuccessfully sought postconviction relief from the Mississippi Supreme Court. The question presented to us is whether the state court was correct in concluding that the reversal of the New York conviction did not affect the validity of a death sentence based on that conviction.

I

On December 31, 1981, petitioner and three companions were stopped for speeding by a Mississippi highway patrolman. While the officer was searching the car, petitioner stabbed him and, in the ensuing struggle, one of his companions obtained the officer's gun and used it to kill him. Petitioner was apprehended, tried and convicted of murder, and sentenced to death. At the conclusion of the sentencing

---

*Robert M. Kaufman, Jonathan Lang, Eric M. Freedman,* and *Steven B. Rosenfeld* filed a brief for the Committee on Civil Rights of the Association of the Bar of the City of New York as *amicus curiae* urging reversal.

Briefs of *amici curiae* were filed for the Attorney General of the State of New York by *Robert Abrams,* Attorney General, *pro se, O. Peter Sherwood,* Solicitor General, and *Suzanne M. Lynn, Susan Jacobs,* and *Barry Bassis,* Assistant Attorneys General; and for the Mississippi Public Defenders' Association by *Thomas M. Fortner.*

hearing, the jury found three aggravating circumstances,[1] any one of which, as a matter of Mississippi law, would have been sufficient to support a capital sentence. After weighing mitigating circumstances and aggravating circumstances "one against the other," the jury found "that the aggravating circumstances do outweigh the mitigating circumstances and that the Defendant should suffer the penalty of death." 13 Record 2290, 2294; App. 32. The Mississippi Supreme Court affirmed the conviction and sentence, *Johnson* v. *State*, 477 So. 2d 196 (1985), and we denied certiorari, 476 U. S. 1109 (1986).

The sole evidence supporting the aggravating circumstance that petitioner had been "previously convicted of a felony involving the use or threat of violence to the person of another" consisted of an authenticated copy of petitioner's commitment to Elmira Reception Center in 1963 following his conviction in Monroe County, New York, for the crime of second-degree assault with intent to commit first-degree rape. App. 8–9. The prosecutor repeatedly referred to that evidence in the sentencing hearing, stating in so many words: "I say that because of having been convicted of second degree assault with intent to commit first degree rape and capital murder that Samuel Johnson should die." 13 Record 2276; App. 23.[2]

---

[1] The jury found the following aggravating circumstances:

"(1) That the defendant, Samuel Johnson, was previously convicted of a felony involving the use or threat of violence to the person of another.

"(2) That the defendant, Samuel Johnson, committed the capital murder for the purpose of avoiding arrest or effecting an escape from custody.

"(3) The capital murder was especially heinous, atrocious and cruel." 13 Record 2289, 2294; 511 So. 2d 1333, 1337 (Miss. 1987).

[2] Petitioner's version of the assault is described in an affidavit as follows:

"3. I have a good recollection of the facts concerning my 1963 conviction for assault second. Charles Taylor and I were in my brother's car, which he loaned to me, in the early morning hours of February 9, 1963. We picked up Malcena Doss after she was leaving another car. Doss was a

Prior to the assault trial in New York in 1963, the police obtained an incriminating statement from petitioner. Despite petitioner's objection that the confession had been coerced, it was admitted into evidence without a prior hearing on the issue of voluntariness. Moreover, after petitioner was convicted, he was never informed of his right to appeal. He made three efforts to do so without the assistance of counsel, each of which was rejected as untimely. After his Mississippi conviction, however, his attorneys successfully prosecuted a postconviction proceeding in New York in which they persuaded the Monroe County Court that petitioner had been unconstitutionally deprived of his right to appeal. The County Court then entered a new sentencing order from which petitioner was able to take a direct appeal. In that proceeding, the New York Court of Appeals reversed his conviction.[3] *People* v. *Johnson*, 69 N. Y. 2d 339, 506 N. E. 2d 1177 (1987).

---

prostitute. After I had sex with her I told her I had no money to pay her and refused to pay her and she got angry. She took down the number of the car and later she told the police that I attacked her. I didn't attack her." App. 136–137 (affidavit of petitioner submitted to the County Court for Monroe County, New York, in support of his motion to vacate judgment of conviction).

[3] The New York court first determined that the appeal was "timely" in light of the "unusual circumstances of [petitioner's] case." 69 N. Y. 2d, at 341, 506 N. E. 2d, at 1178. The court pointed out that the State's actions had deprived petitioner of his right to an earlier appeal:

"It is undisputed that defendant was never advised of his right to appeal from the assault conviction and that, upon discovering that right, he made several timely and diligent *pro se* attempts to obtain review of the judgment through the avenues available to him at the time. Further, it is undisputed that the actions of this State prevented defendant from ever obtaining the review of the conviction to which he was entitled." *Ibid.*

Relying on concessions made by the State, the court then determined that all "records of [petitioner's] trial [had] been lost, that neither reconstruction nor a new trial [was] possible and [that petitioner had] raised appealable issues with possible merit." *Id.,* at 342, 506 N. E. 2d, at 1178. The court concluded in light of all the circumstances that "the only available remedy . . . [was] vacatur of the conviction and dismissal of the indictment." *Id.,* at 96–97.

Petitioner filed a motion in the Mississippi Supreme Court seeking postconviction relief from his death sentence on the ground that the New York conviction was invalid and could not be used as an aggravating circumstance. That motion was filed before the New York proceeding was concluded, but it was supplemented by prompt notification of the favorable action taken by the New York Court of Appeals. Nevertheless, over the dissent of three justices, the Mississippi Supreme Court denied the motion. 511 So. 2d 1333 (1987).

The majority supported its conclusion with four apparently interdependent arguments. First, it stated that petitioner had waived his right to challenge the validity of the New York conviction because he had not raised the point on direct appeal.[4] Second, it expressed concern that Mississippi's capital sentencing procedures would become capricious and standardless if the postsentencing decision of another State could have the effect of invalidating a Mississippi death sentence. *Id.*, at 1338. Third, it questioned whether the New York proceedings were "truly adversarial." *Id.*, at 1338–1339. Finally, it concluded that the New York conviction provided adequate support for the death penalty even if it was invalid, stating:

> "The fact remains that Johnson was convicted in 1963 by a New York court of a serious felony involving violence to a female for which he was imprisoned in that state. No New York court extended Johnson relief from his conviction before Johnson paid his debt to the state. If his crime was serious enough for him to be convicted and

---

[4] The court stated:

"It is apparent that Johnson waived this claim, and it is procedurally barred. At no time during his direct appeal, or in his petition for certiorari to the U. S. Supreme Court did he argue his New York conviction was constitutionally invalid. Moreover, there is nothing to suggest he took any steps to vacate this conviction until he filed this petition. On appeal . . . [n]one [of petitioner's assignments of error] questioned the validity of his New York conviction. See *Evans* v. *State*, 485 So. 2d 276 (Miss. 1986), at 280–281." 511 So. 2d, at 1337.

final enough for him to serve time in a penal institution, it had sufficient finality to be considered as an aggravating circumstance by a jury of this state. No death penalty verdict based upon this conviction need be vitiated by the subsequent relief granted more than twenty years later by the New York Court of Appeals." *Id.*, at 1339.

In reaching this conclusion, the court expressly disavowed any reliance on the fact that two of the aggravating circumstances found by the jury did not turn on the evidence of petitioner's prior conviction. *Id.*, at 1338; see, n. 8, *infra*.[5]

We granted certiorari to consider whether the Federal Constitution requires a reexamination of petitioner's death sentence. 484 U. S. 1003 (1988). We conclude that it does.

## II

The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special "'need for reliability in the determination that death is the appropriate punishment'" in any capital case. See *Gardner* v. *Florida*, 430 U. S. 349, 363–364 (1977) (WHITE, J., concurring in judgment) (quoting *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976)). Although we have acknowledged that "there can be 'no per-

---

[5] Three justices dissented. Relying on the logic of *Phillips* v. *State*, 421 So. 2d 476 (Miss. 1982), and the fact that there was "no way of ascertaining with confidence whether the prior conviction was a significant factor in the jury's determination that [petitioner] should suffer the penalty of death," the dissenters concluded that when an "'aggravating' prior conviction is vacated," "the defendant [is] entitled to relief from his enhanced sentence." 511 So. 2d, at 1344–1345 (Robertson, J., dissenting). They criticized the majority for giving the decision of the New York Court of Appeals "less than full faith and credit," refusing themselves to "indulge in the cynical assumption that the New York Court did less than its duty when it ordered [petitioner's] 1963 conviction vacated." *Id.*, at 1343–1344. The dissenters rejected the majority's invocation of a procedural bar, asserting that under Mississippi law petitioner had acted properly in first seeking relief in the New York courts and that he had no basis for a claim in the Mississippi courts until he obtained that relief. *Id.*, at 1343.

fect procedure for deciding in which cases governmental authority should be used to impose death,'" we have also made it clear that such decisions cannot be predicated on mere "caprice" or on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process." *Zant* v. *Stephens*, 462 U. S. 862, 884–885, 887, n. 24 (1983). The question in this case is whether allowing petitioner's death sentence to stand although based in part on a reversed conviction violates this principle.[6]

In its opinion the Mississippi Supreme Court drew no distinction between petitioner's 1963 conviction for assault and the underlying conduct that gave rise to that conviction. In Mississippi's sentencing hearing following petitioner's conviction for murder, however, the prosecutor did not introduce any evidence concerning the alleged assault itself; the only evidence relating to the assault consisted of a document establishing that petitioner had been convicted of that offense in 1963. Since that conviction has been reversed, unless and until petitioner should be retried, he must be presumed innocent of that charge. Indeed, even without such a presumption, the reversal of the conviction deprives the prosecutor's sole piece of documentary evidence of any relevance to Mississippi's sentencing decision.

Contrary to the opinion expressed by the Mississippi Supreme Court, the fact that petitioner served time in prison

---

[6] Petitioner argues that the Mississippi court's skeptical treatment of the New York Court of Appeals' decision violated the Full Faith and Credit Clause of the United States Constitution. Although we find no merit in the state court's expression of concern about the adversarial character of the New York postconviction proceedings, we do not address the full faith and credit argument here because we do not understand the Mississippi Supreme Court's opinion to turn solely on its view of the validity of the New York judgment. Indeed, most of its reasoning might well be applied equally to the reversal of a prior Mississippi felony conviction. In all events, it is clear on the record before us that petitioner's death sentence is now predicated, in part, on a New York judgment that is not valid now, and was not valid when it was entered in 1963.

pursuant to an invalid conviction does not make the conviction itself relevant to the sentencing decision. The possible relevance of the conduct which gave rise to the assault charge is of no significance here because the jury was not presented with any evidence describing that conduct—the document submitted to the jury proved only the facts of conviction and confinement, nothing more. That petitioner was imprisoned is not proof that he was guilty of the offense; indeed, it would be perverse to treat the imposition of punishment pursuant to an invalid conviction as an aggravating circumstance.

It is apparent that the New York conviction provided no legitimate support for the death sentence imposed on petitioner. It is equally apparent that the use of that conviction in the sentencing hearing was prejudicial. The prosecutor repeatedly urged the jury to give it weight in connection with its assigned task of balancing aggravating and mitigating circumstances "one against the other." 13 Record 2270; App. 17; see 13 Record 2282–2287; App. 26–30. Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be "decisive" in the "choice between a life sentence and a death sentence." *Gardner* v. *Florida, supra,* at 359 (plurality opinion).

We do not share the Mississippi Supreme Court's concern that its procedures would become capricious if it were to vacate a death sentence predicated on a prior felony conviction when such a conviction is set aside. A similar problem has frequently arisen in Mississippi, as well as in other States, in cases involving sentences imposed on habitual criminals. Thus, in *Phillips* v. *State,* 421 So. 2d 476 (Miss. 1982), the court held that the reversal of a Kentucky conviction that had provided the basis for an enhanced sentence pursuant to Mississippi's habitual criminal statute justified postconviction relief. A rule that regularly gives a defendant the benefit of such postconviction relief is not even arguably arbitrary or capricious. Cf. *United States* v. *Tucker,*

404 U. S. 443 (1972); *Townsend* v. *Burke,* 334 U. S. 736 (1948). To the contrary, especially in the context of capital sentencing, it reduces the risk that such a sentence will be imposed arbitrarily.

Finally, we are not persuaded that the state court's conclusion that under state law petitioner is procedurally barred from raising this claim because he failed to attack the validity of the New York conviction on direct appeal bars our consideration of his claim. In its brief before this Court, the State does not rely on the argument that petitioner's claim is procedurally barred because he failed to raise it on direct appeal. Because the State Supreme Court asserted this bar as a ground for its decision, however, we consider whether that bar provides an adequate and independent state ground for the refusal to vacate petitioner's sentence. "[W]e have consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question." *Henry* v. *Mississippi,* 379 U. S. 443, 447 (1965). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.' *Barr* v. *City of Columbia,* 378 U. S. 146, 149 (1964)." *Hathorn* v. *Lovorn,* 457 U. S. 255, 262–263 (1982); see *Henry* v. *Mississippi,* 379 U. S., at 447–448. We find no evidence that the procedural bar relied on by the Mississippi Supreme Court here has been consistently or regularly applied. Rather, the weight of Mississippi law is to the contrary. In *Phillips* v. *State, supra,* the Mississippi Supreme Court considered whether defendant could properly attack in a sentencing hearing a prior conviction which the State sought to use to enhance his sentence. The court made it clear that the sentencing hearing was not the appropriate forum for such an attack:

> "[T]he trial court is not required to go beyond the face of the prior convictions sought to be used in establishing the defendant's status as an habitual offender. If, on its face, the conviction makes a proper showing that a

defendant's prior plea of guilty was both knowing and voluntary, that conviction may be used for the enhancement of the defendant's punishment under the Mississippi habitual offender act.

. . . . .

"[A]ny such frontal assault upon the constitutionality of a prior conviction should be conducted in the form of an entirely separate procedure solely concerned with attacking that conviction. This role is neither the function nor the duty of the trial judge in a hearing to determine habitual offender status. Likewise, any such proceeding should be brought in the state in which such conviction occurred, pursuant to that state's established procedures. Should such proceeding in the foreign state succeed in overturning the conviction, then relief should be sought in Mississippi by petition for writ of error coram nobis." *Id.*, at 481–482.

The reasoning of *Phillips* suggests that the direct appeal of a subsequent conviction and concomitant enhanced sentence is not the appropriate forum for challenging a prior conviction that on its face appears valid. In directing that evidence of invalidation of such a conviction in another proceeding could be brought to the court's attention in a collateral attack of the subsequent conviction, the court did not suggest that the failure previously to raise the issue in the inappropriate forum would bar its consideration on collateral attack.

The Mississippi Supreme Court has applied its reasoning in *Phillips* to facts substantially similar to those presented in this case. In *Nixon* v. *State*, 533 So. 2d 1078 (1988), the court held that the reasoning of *Phillips* applied when a defendant in a capital case sought to attack the validity of a prior conviction introduced to support the finding of an aggravating circumstance at sentencing. In light of the Mississippi Supreme Court's decisions in *Phillips* and *Nixon*, we cannot conclude that the procedural bar relied on by the Mis-

sissippi Supreme Court in this case has been consistently or regularly applied. Consequently, under federal law it is not an adequate and independent state ground for affirming petitioner's conviction.[7]

In this Court Mississippi advances an argument for affirmance that was not relied upon by the State Supreme Court. It argues that the decision of the Mississippi Supreme Court should be affirmed because when that court conducted its proportionality review of the death sentence on petitioner's initial appeal, it did not mention petitioner's prior conviction in upholding the sentence. Whether it is true, as respondent

---

[7] Relying on the State Supreme Court's citation of *Evans* v. *State*, 485 So. 2d 276, 280–281 (Miss. 1986), see n. 4, *supra*, the State urges that the procedural bar invoked by the State Supreme Court here is distinct from the procedural bar applied in *Phillips* and *Nixon*. The State argues that the Mississippi Supreme Court was focused on petitioner's delay in attacking his 1963 conviction rather than on his failure to attack it in the Mississippi courts on direct appeal of his capital conviction. We cannot read so much into the citation of *Evans*. In *Evans*, the Mississippi Supreme Court held that a claim of ineffective assistance of counsel was procedurally barred because defendant had failed to raise the issue in a prior petition for writ of error *coram nobis*. In reaching this conclusion, the court was merely enforcing Miss. Code Ann. § 99–39–21(1) (Supp. 1987), which provides that "[f]ailure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred . . . ." 485 So. 2d, at 280. The citation to *Evans* simply supports our reading of the State Supreme Court's opinion to hold that petitioner's claim was procedurally barred because he failed to raise it in previous proceedings on direct appeal.

Our reading of the State Supreme Court's decision is further supported by the reasoning of the dissent, which reflects a similar understanding of the majority's discussion. In criticizing the majority for engaging in a "recent and illicit romance with procedural bars," 511 So. 2d, at 1343 (Robertson, J., dissenting), the dissent focused exclusively on the inconsistency between the court's holding in *Phillips* and its holding in petitioner's case.

argues, that even absent evidence of petitioner's prior conviction a death sentence would be consistent with Mississippi's practice in other cases, however, is not determinative of this case. First, the Mississippi Supreme Court expressly refused to rely on harmless-error analysis in upholding petitioner's sentence, 511 So. 2d, at 1338; on the facts of this case, that refusal was plainly justified.[8] Second, and more importantly, the error here extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible. Here the jury was allowed to consider evidence that has been revealed to be materially inaccurate.[9]

Accordingly, the judgment is reversed, and the case is remanded to the Mississippi Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR concurs in the judgment.

---

[8] The court stated:

"As we noted, the jury found three aggravating circumstances existed, and of the three we have little doubt that in a rational sentencing process . . . the other two aggravating circumstances would carry greater weight than the New York conviction in determining Johnson's sentence. Indeed, the remoteness in time of the prior conviction was a mitigating circumstance. *Johnson* v. *State*, 477 So. 2d, 196, 219 (1985).

"We eschew "harmless error" in our reasoning, however, because the district attorney argued this particular aggravating circumstance as a reason to impose the death penalty. [*Ibid.*]" 511 So. 2d, at 1338.

The transcript fully supports the majority's decision, as well as the dissent's conclusion that petitioner's prior conviction was "vigorously" argued to the jury as a basis for imposing the death sentence. *Id.*, at 1342; see 13 Record 2271–2287; see *supra*, at 581.

[9] In *Zant* v. *Stephens*, 462 U. S. 862 (1983), we held that on the facts of that case the invalidation of an aggravating circumstance did not, under Georgia's capital sentencing scheme, require vacation of the death sentence. In reaching this holding, we specifically relied on the fact that the evidence adduced in support of the invalid aggravating circumstance was nonetheless properly admissible at the sentencing hearing. *Id.*, at 887.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring.

I join the Court's opinion except insofar as the judgment, which is without prejudice to further sentencing proceedings, does not expressly preclude the reimposition of the death penalty. Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would direct that the resentencing proceedings be circumscribed such that the State may not reimpose the death sentence.

JUSTICE WHITE, with whom THE CHIEF JUSTICE joins, concurring.

I join the Court's opinion, agreeing that the death sentence cannot stand, given the introduction of inadmissible and prejudicial evidence at the hearing before the jury. That evidence, however, was irrelevant to the other two aggravating circumstances found to be present, and I note that the case is remanded for further proceedings not inconsistent with the Court's opinion. It is left to the Mississippi Supreme Court to decide whether a new sentencing hearing must be held or whether that court should itself decide the appropriate sentence without reference to the inadmissible evidence, thus undertaking to reweigh the two untainted aggravating circumstances against the mitigating circumstances. Cf. *Cabana* v. *Bullock*, 474 U. S. 376 (1986).