Luis NUNEZ, Petitioner,

v.

James T. CONWAY, Superintendent Shawangunk Correctional Facility Respondent.

No. 04 CIV.3603 SCR GAY.

United States District Court, S.D. New York.

Feb. 6, 2007.

Luis Nunez, Wallkill, NY, pro se.

## ORDER ADOPTING REPORT AND RECOMMENDATION

ROBINSON, District Judge:

This order addresses a Report and Recommendation dated February 10, 2006. Luis Nunez ("Petitioner"), proceeding *pro se,* has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was referred to Magistrate Judge George A. Yanthis for the issuance of a report and recommendation as to the validity of the petition filed with this Court. For the reasons explained below, this Court accepts and adopts the Report in its entirety.

## I. BACKGROUND

### a. THE INCIDENT AND CRIME

On September 11, 1999, Petitioner was in his home. Outside, his live-in girlfriend, Sonia Fernandez, and a neighborhood resident, Alberto Suarez, argued. The arguing escalated to the point of violence; wit-

nesses observed Ms. Fernandez hitting Mr. Suarez with a beer bottle. (Trial Tr. 318, Apr. 7, 2000.) Ms. Fernandez's daughter, Vanessa Infante, witnessed the altercation, ran upstairs, and told Petitioner, her stepfather. (Trial Tr. 527–28, Apr. 11, 2000.) He ran downstairs and began fighting with Mr. Suarez. During the fight, Petitioner stabbed Mr. Suarez in the chest and sliced his abdomen with a knife. (Trial Tr. 319–20, Apr. 7.2000.) The victim sustained severe injuries, including a laceration of the liver, and spent several days in the hospital. (Trial Tr. 503–05, Apr. 11, 2000.)

### b. *PETITIONER'S CONVICTION AND INCARCERATION*

Petitioner was convicted of first degree assault under N.Y. Penal Law § 120.10(1), and third degree criminal possession of a weapon under N.Y. Penal Law § 265.02(1) on May 11, 2000. (Resp. Opp. Decl. at ¶ 3.) He was subsequently sentenced, as a predicate felony offender, to concurrent terms of twenty years for assault and three and one-half to seven years for weapon possession. (Resp. Opp. Decl. at ¶ 8.) Petitioner is currently incarcerated in state prison at the Shawangunk Correctional Facility, Wallkill, New York.

### c. *PETITIONER'S APPEALS AND POST-JUDGMENT MOTIONS*

Following his conviction, Petitioner through counsel timely appealed the judgment to the Appellate Division, Second Department. His grounds for appeal were: (1) the People failed to make a prima facie case for third degree weapon possession; (2) the evidence presented at trial was legally insufficient to support the assault conviction; and (3) the sentence imposed was harsh and excessive. (Resp.Opp.Decl.Ex. B.) Petitioner then filed a supplemental *pro se* brief, appealing on the grounds that he had ineffective counsel because his attorney did not request a lesser included charge of second degree assault. (Resp. Opp. Decl. Ex. D at 1.) Petitioner's appeal was denied by the Appellate Division, *People v. Nunez*, 299 A.D.2d 426, 749 N.Y.S.2d 435 (2002), and the New York Court of Appeals denied his subsequent leave to appeal. *People v. Nunez*, 99 N.Y.2d 618, 757 N.Y.S.2d 829, 787 N.E.2d 1175 (2003).

While his direct appeal was pending, Petitioner, again proceeding *pro se*, filed a motion to vacate the judgment of his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10[1] on the grounds that his constitutional rights had been violated because he had not been afforded an opportunity to testify before the grand jury. (Resp.Opp.Decl.Ex. I.) Petitioner's motion was summarily denied (Resp.Opp.Decl.Ex. K), as was his appeal to the Appellate Division. (Resp.Opp.Decl.Ex. N.)

In 2003, Petitioner again filed a § 440.10 motion to vacate the judgment on the basis that he had not been afforded effective counsel. (Resp.Opp.Decl.Ex. O.) Specifically, Petitioner's complaints were that counsel: (1) failed to pursue a justification defense; (2) failed to inform Petitioner of his right to testify; (3) failed to effectively cross-examine witnesses; and (4) failed to interview or call a witness that could have exonerated Petitioner. (Resp.Opp.Decl.Ex. O.) His motion was denied by the trial court on procedural grounds (Resp.Opp.Decl.Ex. Q), and his

---

1. CPL § 440.10(2)(a) states that a court must deny a motion to vacate judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."

appeal to the Appellate Division was also denied. (Resp.Opp.Decl.Ex. T.)

Petitioner then appealed to the Appellate Division, Second Department for a writ of error *coram nobis,* arguing that appellate counsel was ineffective. The court denied the motion, *People v. Nunez,* 11 A.D.3d 565, 782 N.Y.S.2d 652 (2004), and the New York Court of Appeals denied his appeal. *People v. Nunez,* 4 N.Y.3d 834, 796 N.Y.S.2d 589, 829 N.E.2d 682 (2005).

Petitioner timely filed the instant Petition for a Writ of Habeas Corpus in April, 2004. He asserts he is entitled to relief on grounds that: (1) he had ineffective counsel; and (2) insufficient evidence to convict.

## II. *STANDARD OF REVIEW*

### a. *REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION BY DISTRICT JUDGE*

In reviewing a Report and Recommendation, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). However, a district court judge is required to make a de novo determination as to the aspects of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 673–74, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). Here, Plaintiff has objected to Judge Yanthis' recommendation. This Court thus engages in a de novo review.

### b. *FEDERAL COURT'S HABEAS STANDARD OF REVIEW*

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Under the habeas statute, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). When a petitioner challenges factual findings, "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. *ANALYSIS OF PETITIONER'S INEFFECTIVE COUNSEL CLAIM*

### a. *EXHAUSTION*

The habeas statute states that a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of

this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982), the Circuit explained, "[t]he exhaustion requirement is not satisfied unless the federal claim has been fairly represented to state courts." (Internal quotation and citation omitted). Moreover, "if the petitioner has cited the state courts to the specific provisions of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts." *Id.* at 192.

Petitioner raises several claims of ineffective counsel, though not all claims are the same as he gave during his state appeals. Petitioner has cited to state courts the specific provisions of the Constitution he relied on when he made his direct appeal (Resp. Opp. Decl. Ex. B at 1), his second § 440.10 motion (Resp. Opp. Decl. Ex. O at 1), and his *coram nobis* appeal (Resp. Opp. Decl. Ex. U at i): A violation of his Sixth Amendment right to effective counsel. Thus, although Petitioner has raised new reasons he was not afforded effective counsel, he has fairly presented his legal basis to the state courts, and has exhausted his claims in state court. *Daye*, 696 F.2d at 192.

### b. *PROCEDURAL BAR*

 "[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus," *Dretke v. Haley*, 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004), "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Beyond requiring that a habeas petitioner exhaust

his claims in state court, *see generally Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), a district court must be satisfied that the procedural bar "provides an adequate and independent state ground for the refusal to vacate petitioner's sentence ... [and] a state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (internal quotations and citations omitted). To determine the adequacy of the procedural bar, a court must examine the circumstances of the case, directed by certain "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna*, 534 U.S. 362, 381–85, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

As to the first guidepost, courts in this Circuit have held that § 440.10(2) is an adequate and independent procedural ground that precludes federal review. *See, e.g., Gillespie v. Miller*, 2004 WL 1689735, at *14, 2004 U.S. Dist LEXIS 14489 at *49 (S.D.N.Y.2004). Petitioner's claim of ineffective counsel was dismissed by the trial court on procedural grounds pursuant to § 440.10(2)(a) because Petitioner was trying to relitigate a claim that had already been adjudicated.

(Resp.Opp.Decl.Ex. Q.) The trial court that dismissed Petitioner's § 440.10 claim thus relied on an adequate and independent procedural ground.

As to the second guidepost from *Cotto*, New York caselaw has held "that an appellate attack on the effectiveness of counsel [must] be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10." *People v. Brown*, 45 N.Y.2d 852, 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (1978).

Petitioner's first appeal was denied on substantive grounds; the Appellate Division found his claim of ineffective counsel without merit. *Nunez*, 299 A.D.2d 426, 749 N.Y.S.2d 435. The Court of Appeals rejected Petitioner's appeal. *Nunez*, 99 N.Y.2d 618, 757 N.Y.S.2d 829, 787 N.E.2d 1175. Petitioner then collaterally attacked the conviction on a § 440.10 motion (Resp.Opp.Decl.Ex. K); that appeal was also rejected. (Resp.Opp.Decl.Ex. N.) Petitioner subsequently filed a second § 440.10 motion, claiming ineffective counsel. (Resp.Opp.Decl.Ex. O.) That appeal was denied on procedural grounds pursuant to § 440.10(2)(a). (Resp.Opp.Decl.Ex. Q.) Petitioner's appeal of that ruling was denied. (Resp.Opp.Decl.Ex. T.) Petitioner subsequently filed a writ of error *coram nobis*, arguing that appellate counsel was ineffective, and yet again the Appellate Division and Court of Appeals denied his motion and appeal. *Nunez*, 11 A.D.3d 565, 782 N.Y.S.2d 652; *Nunez*, 4 N.Y.3d 834, 796 N.Y.S.2d 589, 829 N.E.2d 682.

Although New York law allows for collateral appeals of ineffective counsel claims, this Court is unaware of any case law that provides that once a petitioner has made a post-conviction claim and the claim has been adjudicated that the petitioner has a right to escape the procedural bar under § 440.10. Petitioner has directly appealed and twice collaterally attacked this claim in post-conviction hearings. It is clear "that compliance with the rule was demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240.

■ As to the third guidepost, compliance with the rule serves a strong governmental interest, that of "finality, comity, and the orderly administration of justice . . . ." *Dretke*, 541 U.S. at 388, 124 S.Ct. 1847. *See also Coleman*, 501 U.S. at 750, 111 S.Ct. 2546 (reaffirming "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them"). Since Petitioner had already had this claim adjudicated and was making the claim again, he did not substantially comply with the rule. All three guideposts from *Cotto* have been satisfied, and thus Petitioner is procedurally barred.

### c. *PROCEDURAL BAR EXCEPTION*

■ Petitioner may escape the procedural bar only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. The Supreme Court has noted that the "fundamental miscarriage of justice" exception is narrow, reserved for situations "where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke*, 541 U.S. at 393, 124 S.Ct. 1847 (internal quotations and citations omitted). In the instant case, Petitioner has not made any claims of actual innocence amounting to a miscarriage of justice. Moreover, there is nothing in the record that would indicate that Petitioner is actually innocent of the crimes he was convicted of.

■ Since Petitioner cannot make a claim of actual innocence, he must show

both cause and prejudice to avoid the procedural bar. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. The two-prong test of cause and prejudice was laid out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show cause, a habeas petitioner must show that the errors by counsel are so grave that "counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. For prejudice, petitioner must show that counsel's errors prejudiced the defense and such errors deprived the defendant of a fair trial. *Id.*

Cause may be established by "showing that ... the procedural default is the result of ineffective assistance of counsel," *Bossett v. Walker,* 41 F.3d 825, 829 (internal quotation and citation omitted). When considering whether counsel's errors rose to a Sixth Amendment violation, a court's "scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. "[T]he defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* at 690, 104 S.Ct. 2052 (internal quotation and citation omitted). A petitioner making an ineffective assistance of counsel claim is required to delineate those acts or omissions that "are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

As to the prejudice prong, the Strickland Court explained that a "defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 466 U.S. 668. A district court must determine "whether there is a probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

The Court further instructed that it is not necessary to address both prongs if a petitioner fails to make a sufficient showing on one. *Id.* at 697, 104 S.Ct. 2052. This Court now engages in a *Strickland* analysis of Petitioner's various ineffective counsel claims.

### i. *TRIAL COUNSEL'S SUMMATION*

Petitioner argues that his trial counsel was ineffective because his lawyer, Alvin Spitzer, contradicted the testimony of the only defense witness, Vanessa Infante, during his summation. (Pet'r Mem. Supp. at 6.) On the stand, Ms. Infante testified during direct questioning that while she did see Petitioner and the victim fighting, she did not see Petitioner take a knife out of the house. (Trial Tr. 528, Apr. 11, 2000.) In his summation, Spitzer said that Petitioner did not have the requisite intent and, although he may have had and used a knife, was not guilty. (Trial Tr. 597–606, Apr. 13, 2000.)

The prosecution called three witnesses who testified that Petitioner ran out of his house and stabbed the victim. (Trial Tr. 319–20, Apr. 7, 2000); (Trial Tr. 400–01, 440–43, Apr. 10, 2000.) The doctor who treated the victim at the hospital that evening also testified, verifying the cause of the trauma: Stabbing and slashing with a knife. (Trial Tr. 495–503, Apr. 11, 2000.) Moreover, Ms. Infante told Mr. Spitzer's investigators that her mother said she had seen Petitioner with the knife (Trial Tr. 548, Apr. 11, 2000), and this information was made part of the record (Trial Tr. 541, Apr. 11, 2000). Given the weight of information stacked against Petitioner at his trial, Petitioner has failed to establish a "reasonable probability" that the result of the proceeding would have been different had Mr. Spitzer not conceded that his

client had a knife. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Therefore, Petitioner's claim that he had ineffective counsel based on his lawyer's summation is without merit and is dismissed.[2]

### ii. FAILURE TO REQUEST A JURY CHARGE ON SECOND DEGREE ASSAULT

■ Petitioner argues that his attorney was ineffective because he failed to request a jury charge on second degree assault. "The decision whether to request a lesser included offense instruction is thus a matter of trial strategy, and as such it is entitled to deference." *Grant v. Bara,* 1989 WL 146796, 1989 U.S. Dist. LEXIS 14098 (S.D.N.Y.1989). Under N.Y. Penal Law § 120.05, a person is guilty of second degree assault if he intentionally causes serious physical injury to another person. As discussed, defense counsel's theory of the case was that Petitioner did not have the requisite intent to do serious harm to the victim. (Trial Tr. 597–606, Apr. 13, 2000.) Here, Petitioner is contemporaneously saying that he did not have the requisite intent to do harm *and* that the jury should have been given a charge that includes a required element of intent to do harm. Counsel's decision not to pursue such lesser included offense was not objectively unreasonable as seeking a second degree assault charge could have undermined Petitioner's defense that he did not have intent to cause harm. Based on the *Strickland* analysis, Petitioner has not shown that counsel operated outside professional norms. This claim is dismissed for lack of cause.[3]

### iii. FAILURE TO IMPEACH PROSECUTION WITNESSES' TESTIMONY

Petitioner claims that his trial counsel did not effectively impeach the prosecution witnesses. (Pet'r Mem. Supp. at 7.) Beyond the single sentence in his memorandum, Petitioner makes no specific allegations as to how counsel failed to impeach, how he was operating outside professional bounds, or how the jury could have been prejudiced by counsel's failure. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. This Court, in conducting its de novo review, also fails to find cause or prejudice. Therefore, this claim is dismissed.

### iv. FAILURE TO PURSUE A JUSTIFICATION DEFENSE

■ Under New York law, a person may use a justification defense if he reasonably believes using force is necessary to defend a third person. N.Y. Penal Law § 35.15(1). However, if a defendant seeks to use the justification defense in a case where he has used deadly force, the defendant must have reasonably believed that the attacker was using deadly force himself. N.Y. Penal Law § 35.15(2). In this case, Petitioner was clearly using deadly force when he stabbed victim, lacerating his liver. (Trial Tr. 503, Apr. 11, 2000.) Although Petitioner alleges that the person he was defending "was in trouble and that she needed his assistance," the record does not reflect that he reasonably believed that the victim was using deadly force.[4] Trial counsel's decision not to pur-

---

2. Petitioner has also failed to overcome the cause prong of *Strickland.* His counsel's decision to pursue a lack of intent defense was valid based on the record, and is clearly not "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

3. Petitioner has also failed to establish how the factfinder would have reasonable doubt respecting the guilt had the lesser charge been given, and therefore also has not proven the prejudice prong. *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052.

4. The witnesses did not describe the victim using deadly force on Sonia Fernandez. Dan-

sue the justification defense was not outside the bounds of professional conduct, and therefore Petitioner has failed to prove cause under *Strickland.* 466 U.S. at 690, 104 S.Ct. 2052.

### v. *DENIAL OF PETITIONER'S RIGHT TO TESTIFY*

 A defendant has the absolute right to testify in his own defense, and that right is an essential part of due process. *See generally Rock v. Arkansas,* 483 U.S. 44, 50, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The right to testify is a right only waivable by the defendant, and not his counsel. *See generally Brown v. Artuz,* 124 F.3d 73 (2d Cir.1997). Petitioner claims that his attorney did not inform him of his right to testify, and told Petitioner that he in fact *could not* testify. (Pet'r Mem. Supp. at 17.) Petitioner's counsel stated on the record that because of an adverse *Sandoval* ruling,[5] Petitioner had advised counsel that he did not want to testify.[6] (Trial Tr. 575–76, Apr. 13, 2000.)

 It appears from the record that Petitioner knew of his right to testify, but directed his attorney not to call him to the stand. Given the outcome of the *Sandoval* hearing, considering Petitioner's prior felony assault conviction, it appears clear that the prosecution would have revealed Peti-

tioner's criminal record to the jury. Assuming, arguendo, that Petitioner was denied the right to testify by his attorney, he has not made any showing that the outcome of the trial would be different had he been allowed to testify. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

Further, the testimony Petitioner wanted entered into the record was duplicative because Vanessa Infante had already relayed much of the story that Petitioner wished to tell. (Trial Tr. 525–28, Apr. 11, 2000); (Pet'r Mem. Supp. at 18–19.) Petitioner therefore fails the prejudice test of *Strickland,* and this claim is dismissed. *Id.*

### vi. *FAILURE TO INTERVIEW SONIA FERNANDEZ OR CALL HER AS A WITNESS*

Petitioner argues that he was denied effective counsel because his attorney did not interview Sonia Fernandez or called her to testify. He asserts that Ms. Fernandez's testimony could corroborate his story that Ms. Fernandez was being assaulted and was in grave danger, and that Petitioner was justified in his actions. (Pet'r Mem. Supp. 18.)

 To properly make his case in certain situations, a defense counsel should "speak before trial with readily-available fact witnesses whose non-cumulative testi-

---

ny Guzman said that the victim was "just trying to block, like not to get hit ...." (Trial Tr. 387, Apr. 10, 2000.) Alberto Suarez, the victim, also testified he was trying only to defend himself. (Trial Tr. 397–98, Apr. 10, 2000.) Moises Santos testified that the victim "stood there listening" as Ms. Fernandez argued with him. (Trial Tr. 440, Apr. 10, 2000.) Ms. Infante, for the defense, testified that the victim and Ms. Fernandez "started fighting, and he was punching her and kicking her...." (Trial Tr. 525, Apr. 11, 2000.) Ms. Infante does not describe anything approaching deadly force. There is nothing more to show that Petitioner reasonably believed, nor had reason to believe, that the victim was using deadly force against Ms. Fernandez.

**5.** A *Sandoval* hearing determines whether a defendant, before deciding to testify, can exclude the prosecution from bringing up defendant's criminal record for purposes of impeaching defendant's testimony. *See* 33 N.Y. Jur.Crim. Law § 2108; *see also People v. Matthews,* 68 N.Y.2d 118, 506 N.Y.S.2d 149, 497 N.E.2d 287 (1986).

**6.** Petitioner had a prior felony convictions in New York for second degree assault and in Connecticut for possession of cocaine with intent to sell. (Trial Tr. 279–80, Apr. 6, 2000.)

mony would directly corroborate the defense's theory of important disputes." *Pavel v. Hollins,* 261 F.3d 210, 221 (2d Cir.2001). However, this need is obviated when there is "reason to believe that pursuing certain investigations would be fruitless or even harmful . . . ." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. In these cases, "counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

 Here, Ms. Fernandez had been drinking for several hours before the incident and witnesses testified that she had hit the victim with beer bottles.[7] (Trial Tr. 386, 397–98, Apr. 10, 2000.) She was Petitioner's live-in girlfriend at the time, and she also had a criminal charge pending at the time of Petitioner's trial stemming from this incident; her testimony may have been impeached on cross examination by the prosecution.[8] Her testimony would have been duplicative; Ms. Infante had already told a similar version of the story when she was called by the defense. (Trial Tr. 525–28, Apr. 11, 2000.) Petitioner has not overcome the strong presumption that his attorney's decision to call Ms. Infante and not Ms. Fernandez was sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. It is also not clear that Ms. Fernandez's testimony would have changed the result of the proceeding. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. For the foregoing reasons, this claim is dismissed.

## IV. *ANALYSIS OF PETITIONER'S INSUFFICIENT EVIDENCE TO CONVICT CLAIM*

### a. *EXHAUSTION*

As discussed in Part III.a, Petitioner's claims must be exhausted for the district court to rule on his habeas petition. 28 U.S.C. § 2254(c). The Circuit heard an appeal of a habeas petition in *Fama v. Commissioner of Correctional Services.,* 235 F.3d 804 (2d Cir.2000). The court held that "where a state court says that a claim is not preserved for appellate review and then ruled in any event on the merits, such a claim is not preserved." *Id.* at 811 n. 4 (internal quotation and citation omitted).

Here, Petitioner claimed on his direct appeal that there was insufficient evidence to convict him of assault in the first degree and that the prosecution failed to make a prima facie case for possession of a weapon in the third degree. (Resp.Opp.Decl.Ex. B.) The Appellate Division ruled that Petitioner had not preserved this claim for appellate review under N.Y. CPL § 470.05(2), and that, in any event, there was sufficient evidence for the jury to convict Petitioner. *People v. Nunez,* 299 A.D.2d 426, 749 N.Y.S.2d 435 (2002). *Fama,* 235 F.3d 804.

Therefore, since the Appellate Division heard from Petitioner on both counts, and found that there was sufficient evidence to convict on both counts, Petitioner's claims are exhausted in New York.

### b. *PROCEDURAL BAR*

As discussed in Part III.a, if habeas petitioner's claims are procedurally barred, this Court must engage in the *Strickland* analysis. Again, a district court must be satisfied that the procedural bar "provides an adequate and independent state ground for the refusal to vacate petitioner's sentence . . . [and] a state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." *Johnson,* 486 U.S. at 587, 108 S.Ct. 1981. Un-

---

**7.** In her affidavit, Ms. Fernandez also admitted hitting the victim with a beer bottle. (Resp. Mem. Opp. at 23.)

**8.** Alternatively, Ms. Fernandez may have invoked her Fifth Amendment privilege.

der the *Cotto* "guidepost" analysis, the procedural violation was relied upon by the court,[9] state caselaw does indicate that compliance is demanded,[10] and demanding compliance with the rule does in fact serve a legitimate governmental purpose.[11] *Cotto*, 331 F.3d at 240. The Circuit has long held that a failure to preserve a claim under § 470.05 is an adequate bar to federal habeas review. *See Bossett v. Walker*, 41 F.3d 825, 829 n. 2 (2d Cir.1994); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir.1991); *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir.1981).

Petitioner's claim was dismissed under § 470.05; as this is an adequate bar to federal habeas review, *Bossett*, 41 F.3d at 825, that is "regularly" followed, *Johnson*, 486 U.S at 587, 108 S.Ct. 1981, and passes the guidepost test, *Cotto*, 331 F.3d at 240, Petitioner is procedurally barred from making his insufficient evidence claim.

### C. *PROCEDURAL BAR EXCEPTION*

Thus, Petitioner may only escape the procedural bar if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

As with Petitioner's ineffective counsel claims, Petitioner cannot make a claim of actual innocence. Therefore, he must make a showing of both cause and prejudice. Petitioner has not filed a memorandum of law in support of his insufficient evidence claim and has made no effort to Show either cause or prejudice. This Court finds that Petitioner has failed to meet his burden, and his claim is therefore dismissed.

### V. *CONCLUSION*

Based on the foregoing, Judge Yanthis's well-reasoned Report and Recommendation is affirmed and Petitioner's petition for a writ of habeas corpus is DENIED.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See Lozada v. United States*, 107 F.3d 1011, 1016–17 (2d Cir.1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to close this case.

---

9. The court held that "defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review." *Nunez*, 299 A.D.2d at 426, 749 N.Y.S.2d 435.

10. *See generally People v. Gray*, 86 N.Y.2d 10, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995).

11. The Court of Appeals has identified several reasons for the preservation rule: (1) a specific motion provides the opportunity for the trial court to correct an error; (2) such an objection "alerts all parties to alleged deficiencies in the evidence and advances the truth-seeking purpose of the trial"; and (3) such an objection "advances the goal of swift and final determinations of the guilt or non-guilt of a defendant." *Gray*, 86 N.Y.2d at 20–21, 629 N.Y.S.2d 173, 652 N.E.2d 919.